STATE v. ARTHUR MORRIS.

(Filed 3 May, 1939.)

**1. Burglary §§ 1, 2—Definition of burglary in the first and second degrees.**

The common law offense of burglary has been divided by statute into burglary in the first degree, which is the breaking and entering of a dwelling house or room used as a sleeping apartment, at nighttime, while the same is actually occupied by any person, with intent to commit a felony; while burglary in the second degree is the commission of the offense when the dwelling house or sleeping apartment is not actually occupied at the time, C. S., 4332.

**2. Burglary § 11: Criminal Law § 54b—Verdict, interpreted with reference to indictment, evidence and charge, held sufficiently definite.**

Defendant was tried upon an indictment charging burglary in the first degree, breaking and entering with intent to commit the crime of larceny, and larceny. The evidence tended to show that defendant burglariously entered a dwelling house at nighttime while same was occupied by its owner and stole therefrom certain goods and chattels. The court charged the jury that it could return one of two verdicts, guilty of burglary in the first degree or not guilty. *Held:* The jury's verdict of "Guilty as charged" when interpreted with reference to the indictment, the facts in evidence, and the charge of the court, is sufficiently determinative and supports the sentence for the capital crime, though in matters of such supreme importance the jury should definitely and expressly say of what degree of the crime they convict the defendant.

**3. Burglary § 10: Criminal Law § 53d—Where all the evidence shows that dwelling house was occupied at the time, the court need not submit question of second degree burglary.**

Where the uncontradicted evidence for the State tends to show the breaking and entering of a dwelling was at nighttime while the same was actually occupied by the owner thereof, and that goods and chattels were stolen therefrom, the refusal of the court to submit instructions requested that the jury might find defendant guilty of burglary in the second degree will not be held for error, even though such a verdict would be allowed to stand as being favorable to defendant, if returned by the jury. C. S., 4641.

APPEAL by defendant from *Harris, J.,* at September Term, 1938, of WAKE.

Criminal prosecution tried upon indictment in which it is charged that the prisoner, and another, did on 29 December, 1937, about the hour of twelve in the night of the same day, with force and arms at and in the county of Wake, feloniously and burglariously break and enter the dwelling house of one Dr. W. B. Dewar, then and there actually occupied by the said Dr. W. B. Dewar, "with intent the goods and chattels of the said Dr. W. B. Dewar in the said dwelling house then

and there being, then and there feloniously and burglariously to steal, take and carry away, against the peace and dignity of the State."

There is a second count in the bill charging the breaking and entering, with intent to commit the crime of larceny, and also charging the actual commission of larceny of goods of the value of $82.00.

The State's evidence, taken in connection with that offered by the defendant, clearly establishes a case against the defendant of burglary in the first degree as charged in the bill of indictment. The facts are short and simple: On the night in question, the dwelling house of Dr. W. B. Dewar, located at No. 930 Vance Street in the city of Raleigh, was in the actual occupation of the owner and his family. The defendant and his accomplice, David Fisher, came from Durham that night, went to the flower garden back of the Dewar home, the defendant remarking, "this is a hold up," and he "went up the steps to the back window," in the nighttime, "broke into the house," took a wallet or bill folder containing a Liggett & Myers dividend check for $80.00, and was frightened away by the sound of a thermostat. The occupants of the house, though greatly frightened, remained quiet to avoid the risks of a physical encounter. The check, made payable to W. B. Dewar, was presented by the defendant to the Fidelity Bank in Durham on the morning of 29 December, 1937. This led to his arrest, later confession and conviction.

The court instructed the jury that, under the evidence, only one of two verdicts might be rendered: "That is, you can find this defendant guilty of burglary in the first degree or not guilty." Exception. All other portions of the charge are admitted to be correct.

In apt time, the defendant requested the following special instruction:

"Our law provides (C. S., 4641) that when the crime charged in the bill of indictment is burglary in the first degree, the jury may render a verdict of guilty of burglary in the second degree if they deem it proper to do so and I instruct you that you have the right to return a verdict of guilty of burglary in the second degree." Instruction refused; exception.

Verdict: "Guilty as charged."

Judgment: Death by asphyxiation.

The defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State.*

*J. C. Little and W. Brantley Womble for defendant, appellant.*

STACY, C. J. To seek to injure another or to take advantage of him while he is disarmed by sleep is to evince a heart devoid of social duties

and a mind fatally bent on mischief. Such is the stuff of which house-thieves are made. Hence, burglary was regarded at the common law as one of the worst of crimes. 9 Am. Jur., 239. In its highest degree, it is still a capital offense in North Carolina. The purpose of the law was and is to protect the habitation of men, where they repose and sleep, from meditated harm. "A burglar (or the person that committeth bur-glary)," says Lord Coke, 3 Inst., 63, "is by the common law a felon, that in the nighttime breaketh and entereth into a mansion house of another, of intent to kill some reasonable creature, or to commit some other felony within the same, whether his felonious intent be executed or not." To a conviction, under the common law, it was necessary to allege and prove: *first,* the breaking; *second,* the entering; *third,* that the house, broken and entered, was at the time a mansion-house; *fourth,* that the breaking and entering was in the nighttime; *fifth,* that the breaking and entering was with intent to commit a felony therein. *S. v. Whit,* 49 N. C., 349; 9 Am. Jur., 240. And such was the law of burglary in this State prior to the enactment of ch. 434, Public Laws 1889, now codified as C. S., 4232, 4233 and 4641, which avowedly was enacted "to amend the law in rela-tion to the crime of burglary" by dividing the offense into two degrees, first and second, with certain designated differences between the two, and with different punishments prescribed therefor. *S. v. Foster,* 129 N. C., 704, 40 S. E., 209.

The first degree is where the crime is committed "in a dwelling house, or in a room used as a sleeping apartment in any building, and any person is in the actual occupation of any part of said dwelling house or sleeping apartment at the time," while the second degree is where the crime is committed "in a dwelling house or sleeping apartment not actually occupied by any one at the time . . . or . . . in any house within the curtilage of a dwelling house or in any building not a dwelling house, but in which there is a room used as a sleeping apart-ment and not actually occupied as such at the time." C. S., 4232.

The first degree is punishable with death and the second degree with imprisonment in the State's Prison for life, or for a term of years, in the discretion of the court. C. S., 4233.

Coming then to the record before us and interpreting it with refer-ence to the indictment, the facts in evidence, and the charge of the court —a permissible method of interpretation—we think it is manifest that the verdict, "guilty as charged," means "guilty of burglary in the first degree" as charged in the bill of indictment. *S. v. Whitley,* 208 N. C., 661, 182 S. E., 338; *S. v. Bryant,* 180 N. C., 690, 104 S. E., 369; *S. v. Wiggins,* 171 N. C., 813, 89 S. E., 58; *S. v. Millican,* 158 N. C., 617, 74 S. E., 107. So clearly is this so that no challenge has been made to the sufficiency of the verdict. The record as a whole reveals the clear

intent of the jury. *S. v. Kinsauls,* 126 N. C., 1095, 36 S. E., 31. Indeed, the facts essential to the establishment of the capital offense are not in dispute. *S. v. Foster, supra; S. v. Whit, supra.* They appear in part from the defendant's own evidence.

Under the principle stated, and owing to the clearness of the evidence and the very definite and precise instruction of the court as to the terms of the verdict, we find no difficulty in giving the instant verdict significance and upholding it as sufficiently determinative by reference to the indictment, the facts in evidence, and the charge of the court. *S. v. Wiggins, supra.*

We deem it proper to say, however, that this method of interpreting a record is not a desirable one in a capital case where the pitfalls attendant upon such procedure are wholly disproportionate to the ease with which they may be avoided. *S. v. Murphy,* 157 N. C., 614, 72 S. E., 1075. In a matter of supreme importance, the jury should definitely and expressly say of what degree of crime they convict the prisoner, and the verdict should be recorded as rendered. There should be no room for doubt or mistake. *S. v. Matthews,* 191 N. C., 378, 131 S. E., 743.

The only question debated on argument and in brief is whether the court committed error in refusing to submit the case to the jury on the charge of burglary in the second degree as requested by the prisoner in his prayer for special instruction. The authorities answer in the negative. *S. v. Spain,* 201 N. C., 571, 160 S. E., 825; *S. v. Ratcliff,* 199 N. C., 9, 153 S. E., 605.

It is provided by C. S., 4641, that upon an indictment for burglary in the first degree, the jury may render a verdict of burglary in the second degree "if they deem it proper so to do." But this, according to our previous decisions, does not, as a matter of law, authorize the trial court to instruct the jury that such a verdict may be rendered independently of all the evidence. *S. v. Johnston,* 119 N. C., 883, 26 S. E., 163; *S. v. Alston,* 113 N. C., 666, 18 S. E., 692; *S. v. Fleming,* 107 N. C., 905, 12 S. E., 131. It has been said, however, that in such a case, a verdict of burglary in the second degree, if returned by the jury, would be permitted to stand, notwithstanding evidence of occupancy of the dwelling house at the time of the alleged offense. *S. v. Smith,* 201 N. C., 494, 160 S. E., 577. And this upon the principle that the verdict, being favorable to the prisoner, may not, for this reason, be successfully challenged by him. *S. v. Alston, supra.* Here, all the evidence establishes the actual occupation of the dwelling house at the time of the offense. *S. v. McKnight,* 111 N. C., 690, 16 S. E., 319. This precluded the court from submitting the case to the jury on the charge of burglary in the second degree as defined by C. S., 4232. *S. v. Spain, supra,* and cases there cited.

Speaking to the question in *S. v. Ratcliff, supra,* it was said : "There is no evidence on the present record of burglary in the second degree as defined by C. S., 4232, unless the jury disbelieve the evidence relating to occupancy. *S. v. Alston,* 113 N. C., 666, 18 S. E., 692. All the evidence tends to show that the dwelling house was actually occupied at the time of the alleged offense. Hence, under these conditions, according to our previous decisions, an instruction that the jury may render a verdict of burglary in the second degree, 'if they deem it proper to do so' (C. S., 4641), would be erroneous, though a verdict of burglary in the second degree, if returned by the jury, would be permitted to stand, such a verdict, under the circumstances, being regarded as favorable to the prisoner. *S. v. Fleming, supra; S. v. Alston, supra.* This may seem somewhat illogical, in view of C. S., 4640 and 4641, nevertheless it is firmly established by a number of decisions."

Our conclusion is, that the record contains no exceptive assignment of error which can be sustained. The verdict and judgment will be upheld.

No error.