STATE v. ROSS McAFEE (ALIAS J. C. ADAMS)

(Filed 6 November, 1957)

1. Burglary § 1—

The opening of a window which is closed, although not fastened, but held in place by its own weight, or pulley weights, is a sufficient "breaking" within the meaning of that term as used with reference to burglary in the first degree.

2. Burglary § 6—

Where all the evidence tends to show the offense of burglary in the first degree, and there is no evidence that the dwelling was unoccupied at the time, the court should not submit to the jury the question of defendant's guilt of burglary in the second degree. G.S. 15-171 was repealed by Ch. 100, Session Laws of 1953.

3. Same—

The court's charge on the unrestrained discretionary right of the jury to recommend life imprisonment if the jury should convict the defendant of the crime of burglary in the first degree, *held* without error, and the verdict of the jury finding defendant guilty of burglary in the first degree without recommendation of life imprisonment *is upheld*, there being no error of law in the trial.

APPEAL by defendant from *Armstrong, J.*, March Term, 1957, of ALEXANDER.

Criminal prosecution for the capital felony of burglary in the first degree upon the following bill of indictment, viz.:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT: That Ross McAfee, alias J. C. Adams late of the County of Alexander, on the 31st day of January, A.D. 1957, about the hour of

STATE v. McAFEE.

twelve in the night of the same day, with force and arms, at and in the County aforesaid, the dwelling house of one Glenn Waugh and wife, Lovell Waugh, feloniously and burglariously did break and enter said dwelling house with the felonious intent, he, the said Ross McAfee, alias J. C. Adams, to rape, ravish and carnally know Lovell Waugh, a female person occupying said dwelling house at the time, by force and against her will, against the form of the Statute in such case made and provided and against the peace and the dignity of the State."

The only evidence was that offered by the State. It tended to establish the facts summarized below.

Lovell Waugh, then seventeen years of age, lived with Glenn Waugh, her husband, in Taylorsville, N. C. Their dwelling consisted of a bedroom, a kitchen and a bath. A door to the kitchen was the only door for entrance to the dwelling from the outside. There were five windows in the dwelling.

On the night of January 31, 1957, Mrs. Waugh was in her dwelling alone. The door was closed and locked and all windows were closed. Between 8 and 8:30 p.m., after dark, there was a knock at the door. She left her bedroom and went into the kitchen. She did not unlock or open the door but asked who was there. The man outside answered, "J. C.," and asked if she had a cigarette. When she told him, "No," she thought he said, "O.K.," and that he walked off. Then she returned to her bedroom.

Shortly thereafter she heard a rustle of leaves and a crunching of gravel outside her bedroom window. She testified: "The window was tightly closed and the blind (Venetian) was closed also. I heard the window raise up slowly." She went towards the window and raised the blind. Then she observed that the bottom half of the window had been completely raised and she saw the defendant standing outside at the opened window. She ordered him to go away, but instead the defendant leaped through the open window into the bedroom. She made a dash for the kitchen door, trying to get away, but the defendant "grabbed (her) around the neck with his hands." In vulgar terms, he asked if she was going to let him have sexual intercourse with her; and her answer was a defiant, "No." Thereupon, as she struggled with him, he choked her and cut her, principally on her throat and neck; and he succeeded in getting her down on the floor, with her head partially under the stove. Then he got down upon her and attempted, but without success, to have sexual intercourse with her.

Mrs. Waugh, in addition to her physical resistance to the defendant, undertook by her conversation to divert the defend-

ant and thereby gain an opportunity for escape. Unsuccessful in his attempt within the dwelling, defendant had her get up and go out with him to her husband's car. She got in the driver's seat, but she had no key with which to start the car. After some conversation as to where he might obtain the necessary key, the defendant got out of the car; and when he did so she locked the doors of the car and blew the horn continuously. Thereupon, the defendant fled; and a neighbor, attracted by the blowing of the horn, came to Mrs. Waugh's rescue and took her to the hospital.

Upon arrival at the hospital, Mrs. Waugh was treated for nervousness and shock and for her wounds. The doctor testified: "She had a swelling and discoloration of the left eye, and had a great deal of blood on her clothing and about her face and neck, and a number of wounds on her neck, and one wound had cut through into her larnyx. There were two small wounds on her right hand. It is hard to say how many wounds she had in her neck, because they crossed each other and ran into each other, and there were, I would say, at least five or six different wounds. The wounds must have been made with a real sharp instrument, and could easily have been made with a knife. There were a good many stitches taken in her neck and a few in her legs. In all, I would say around forty or fifty stitches were taken."

The State's evidence tended to show that defendant's statements as to what occurred were in substantial accord with the testimony of Mrs. Waugh; and the State, apart from the doctor's testimony, offered substantial evidence as to physical facts tending to corroborate Mrs. Waugh's testimony.

Verdict: "We find him guilty of Burglary in the First Degree, as charged in the bill of indictment." The clerk then inquired: "Without recommendation of life imprisonment instead of death?" The foreman of the jury replied: "Without recommendation."

Judgment: Death by inhalation of lethal gas.

Defendant excepted and appealed.

*Attorney-General Patton and Assistant Attorney-General Bruton for the State.*

*J. H. Burke for defendant, appellant.*

BOBBITT, J. Defendant's assignments of error relate to a single question, namely, the sufficiency of the evidence to support a conviction for the crime of burglary in the first degree.

Defendant's contention is that the State's case is defective with reference to burglary in the first degree in that it fails to

show a *breaking* within the meaning of that legal term as used and understood at common law in relation to the crime of burglary; and defendant's contention is brought into focus by his exception to the excerpt from the charge quoted below.

"The Court charges you that there is a sufficient breaking where a person makes an entry possible without additional effort by pushing or pulling open a door which is shut but neither locked nor latched or by raising or lowering a window which is closed, although not fastened, but held in place by its own weight, or pulley weights."

As expressed in defendant's brief: "Counsel for the prisoner makes no point about the time as being after dark, or night-time, and none as to the place being an occupied dwelling, but insists that the mere raising of an unfastened window where there was no screen, no hook or other device placed there by the owner or occupant, to require loosing or breaking in order to enter, is not a 'breaking' under the proper construction of the common law."

The contention now made by petitioner has been rejected by authoritative decisions of this Court.

In *S. v. Fleming,* 107 N.C. 905, 12 S.E. 131, a burglary case, the trial judge charged the jury as to the breaking as follows: "In order to constitute a breaking in this case, either the window blind must have been fastened or else the door to the dining-room and cook-room opening to the outside must have been fastened. To constitute a fastening in either instance it is not necessary that the inmates of the house should have resorted to locks and bolts. If held in their position (having been shut by the witness, Denby James), by their own weight and in that position relied on by the inmates as a security against intrusion, it is sufficient. It would not be sufficient breaking if the blinds, or door were ajar however slightly, and the prisoner simply increased the size of the opening and through it entered. The jury must be fully satisfied from the evidence in the case that either the window blind or the dining-room door was so shut, fastened and relied upon as a security against intrusion at the time of the entry into the house; for burglary cannot be committed by the entering through an open door or window."

Referring to the quoted portion of the charge, *Clark, J. (later C.J.),* for the Court, said: "The charge of the court as to what would be a sufficient 'breaking' is fully sustained by the precedents. If a door or window is firmly closed, it is not necessary that it should be bolted or barred. *S. v. Boon,* 35 N.C. 244; Whart. Cr. Law, Secs. 759 and 767, and cases cited. Take the case of raising a window not fastened, although there was a

hasp which could have been fastened (*Reg. v. Hyams*, 7 Car. & P. 441, and *S. v. Carpenter*, 1 Houston (C.C.) 367); or where the prisoner, by raising or pulling down the sash, kept in its place merely by pulleyweight (*Rex v. Haines*, Russ & Ryan, 451); or by pushing open a closed door, not latched (*S. v. Reid*, 20 Iowa 413); or closed but not locked (*Hild v. State*, 67 Ala. 39); or firmly closed, though there was no fastening of any kind on the door (*Finch v. Commonwealth*, 14 Grat. 643); or (*Ryan v. Bird*, 9 Car. & P.) where the glass of a window had been cut, but every portion of the glass remained in its place until the prisoner pushed it in and so entered; or where a window was on hinges, with nails behind it as wedges, but which, nevertheless, would open by pushing, and was so opened by the prisoner; in all of which cases the 'breaking' was held to be sufficient. If the entrance was either by pulling open the blinds which had been firmly closed, whether fastened by the catch or not, or through the door, which had been bolted, the above decisions apply."

In *S. v. Johnston*, 119 N.C. 883, 26 S.E. 163, where the only evidence of breaking was the raising of the sash of one of the bedroom windows, the trial judge instructed the jury, in part, as follows: "So, where the sash of a window is down, and there is no fastening above the sash, and one lifts or raises the sash, it constitutes a case of breaking." The charge was held correct by this Court; and the sentence of death imposed, upon conviction for burglary in the first degree, was upheld.

In later cases, the raising of a closed window or the opening of a closed door has been recognized as a sufficient breaking; and where the evidence was to this effect, the State's case was held sufficient to warrant a verdict of guilty of burglary in the first degree. *S. v. Allen*, 186 N.C. 302, 119 S.E. 504; *S. v. Ratcliff*, 199 N.C. 9, 153 S.E. 605; *S. v. Walls*, 211 N.C. 487, 191 S.E. 232; *S. v. Feyd*, 213 N.C. 617, 197 S.E. 171; *S. v. Chambers*, 218 N.C. 442, 11 S.E. 2d 280; *S. v. Johnson*, 218 N.C. 604, 12 S.E. 2d 278.

The rule established by our decisions is in accord with the great weight of authority in other jurisdictions and in accord with the rule as stated by text writers. 9 Am. Jur., Burglary secs. 10 and 12; 12 C.J.S., Burglary sec. 3(b); Bishop on Criminal Law, 9th Ed. (1923), Vol. II, sec. 91; Cyclopedia of Criminal Law, Ch. 14, sec. 465; Clark and Marshall on Crimes (5th Ed., Kearney), sec. 410; McClain on Criminal Law, sec. 500; Miller on Criminal Law, sec. 108; Wharton's Criminal Law (11th Ed.), sec. 981.

Since a new trial was awarded in the Allen, Ratcliff, Feyd and Chambers cases, cited above, on other grounds, attention is called to the fact that, under Judge Armstrong's instruction, the jury was at liberty to return any one of five possible verdicts, viz.: (1) a verdict of guilty of burglary in the first degree without recommendation that the punishment be imprisonment for life in the State's Prison; or (2) a verdict of guilty of burglary in the first degree with recommendation that the punishment be imprisonment for life in the State's Prison; or (3) a verdict of guilty of a nonburglarious breaking or entering the dwelling house of another with intent to commit a felony or other infamous crime therein; or (4) a verdict of guilty of a nonburglarious breaking or entering the dwelling house of another wrongfully but without intent to commit a felony or other infamous crime therein; or (5) a verdict of not guilty.

Since all the evidence tended to show that the dwelling house was actually occupied at the time of the alleged offense, there was no evidence of burglary in the second degree. Hence, burglary in the second degree was not and should not have been submitted to the jury.

In this connection, it should be noted that in *S. v. Johnson,* *supra,* and cases cited therein, this Court held that, notwithstanding the provisions of Ch. 434, sec. 3, Public Laws of 1889, codified as Revisal 3270 and C.S. 4641, it was improper, on a trial for the crime of burglary in the first degree, to instruct the jury that it might return a verdict of guilty of burglary in the second degree if there was no evidence tending to support such verdict. The dissents in the Johnson case were based solely on the provisions of C.S. 4641. This statute was amended by Ch. 7, Public Laws of 1941 and, as amended, was codified as G.S. 15-171. It was then held in *S. v. McLean,* 224 N.C. 704, 32 S.E. 2d 227, that, even if the jury found that the defendant was guilty of burglary in the first degree and there was no evidence of burglary in the second degree, the jury "may elect to render a verdict of guilty of burglary in the second degree if they deem it proper so to do" and that the trial judge was required to "so instruct the jury." Thereafter, G.S. 15-171, upon which the decision in *S. v. McLean, supra,* was based, was repealed by Ch. 100, Session Laws of 1953.

Judge Armstrong charged the jury fully and accurately as to each essential element of the crime of burglary in the first degree and as to each element of each of the lesser crimes upon which the jury might return a verdict of guilty. Moreover, he instructed the jury, in the event the jury found from the evidence beyond a reasonable doubt that the State had established

facts sufficient to constitute all elements of the crime of burglary in the first degree, as follows:

"Now, Gentlemen of the Jury, Section 14-52 of the General Statutes of North Carolina reads as follows:

" 'Any person convicted, according to due course of law, of the crime of burglary in the first degree shall suffer death; Provided, if the jury when rendering its verdict in open court shall so recommend, the punishment shall be imprisonment for life in the State's Prison, and the Court shall so instruct the jury. Anyone so convicted of burglary in the second degree shall suffer imprisonment in the State's Prison for life, or for a term of years, in the discretion of the Court.'

"So, in obedience to this Statute, the Court instructs you that prior to the enactment of this Statute which the Court has just read to you, the punishment for the crime of burglary in the first degree was death, and a recommendation of mercy by a jury had no legal effect. Now, the Court charges you, that under this Statute which I have just read to you, a recommendation by the jury in open court at the time of rendering its verdict of a prisoner convicted, according to due course of law, of burglary in the first degree, that his punishment shall be imprisonment in the State's Prison for life instead of death has the legal effect of reducing the punishment from death to life imprisonment in the State's Prison.

"The Court charges you that the Statute therefore vests in the trial jury the unrestrained discretionary right to mitigate the punishment of one convicted, according to due course of law, of the crime of burglary in the first degree from death to life imprisonment in the State's Prison, by recommending in open court at the time of rendering its verdict that his punishment shall be imprisonment for life in the State's Prison.

"The Court instructs you that if you should find from the evidence in this case beyond a reasonable doubt that the prisoner committed acts sufficient to constitute the crime of burglary in the first degree, and should not elect in your unrestrained discretion that his punishment should be reduced from death to life imprisonment, then you would return a verdict finding the prisoner Guilty of Burglary in the First Degree, without any recommendation that his punishment be imprisonment for life in the State's Prison instead of death.

"On the contrary, however, if you should find beyond a reasonable doubt from the evidence that the prisoner committed acts sufficient to constitute burglary in the first degree, and should find the prisoner guilty of burglary in the first degree, and you should elect in your unrestrained discretion that his

punishment should be reduced from death to life imprisonment, then your verdict would be guilty of burglary in the first degree with a recommendation that the prisoner's punishment be imprisonment for life in the State's Prison instead of death."

A careful consideration of the record fails to disclose any error of law prejudicial to defendant. Rather, it discloses that the case was carefully and correctly tried.

Having been instructed as indicated, and having found the defendant guilty of burglary in the first degree, the jury, in its discretion, elected *not* to recommend that defendant's punishment be imprisonment for life in the State's Prison.

The scene depicted by the evidence reveals a young married woman of courage, stamina and resourcefulness, subjected to a burglarious violation of her home and a felonious assault upon her person by a lewd, brutal, albeit a blundering, man.

No error.