STATE v. CLARENCE PUGH.

(Filed 20 May, 1959.)

**Criminal Law § 114:   Homicide § 29—**

In a prosecution for murder in the first degree it is prejudicial error for the court, after giving correct instructions on the discretionary right of the jury to recommend life imprisonment, to charge further on the contentions of the State that in view of the manner in which the offense was committed the jury should not recommend life imprisonment. G.S. 14-17.

DENNY, J., concurring.

HIGGINS, J., dissenting.

PARKER, J., concurs in dissent.

APPEAL by defendant from *Mallard, J.,* at September 1958 Term of LEE.

Criminal prosecution upon a bill of indictment charging defendant Clarence Pugh with murder in the first degree of one Charles Otis Nodine.

Plea: Not guilty.

Upon the trial in Superior Court the State offered evidence—the defendant offering none— and the case was submitted to the jury under the charge of the court.

Verdict: The Jurors, upon their oath say that the said Clarence Pugh is guilty of the felony and murder in the manner and form as charged in the bill of indictment.

Judgment: Death by inhalation of lethal gas as provided by law.

Defendant objects and excepts and gives notice of appeal, and appeals to the Supreme Court, and assigns error, and is permitted to appeal without making bond, that is, *in forma pauperis.*

STATE *v.* PUGH.

*Attorney General Seawell, Assistant Attorney General Claude L. Love for the State.*

*J. Allen Harrington, E. L. Gavin, H. W. Gavin for defendant, appellant.*

WINBORNE, C. J. The record of case on appeal here presented reveals error in the charge of the court for which, under authority of *S. v. Oakes,* 249 N.C. 282, 106 S.E. 2d 206, a new trial must be had. See also *S. v. Denny,* 249 N.C. 113, 105 S.E. 2d 446, and cases cited.

In this connection, G.S. 14-17, as amended by Section 1 of Chapter 299 of 1949 Session Laws of North Carolina, provides that "A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate, any arson, rape, robbery, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death: provided if at the time of rendering its verdict in open court, the jury shall so recommend, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury. All other kinds of murder shall be deemed murder in the second degree, and shall be punished," etc.

The proviso embraces the 1949 amendment, and has been the subject of discussion in several cases.

And as in *S. v. Oakes, supra,* the error of which complaint is made arises in this manner. It seems that the trial judge charged in substantial accord that where a verdict of guilty of murder in the first degree shall have been reached by the jury, it has the unbridled discretionary right to recommend that the punishment for the crime shall be imprisonment for life in the State's prison, instructing the jury that there are no conditions attached to and no qualifications or limitations imposed upon the right of the jury to so recommend, in keeping with the provisions of G.S. 14-17, as amended by Section 1 of Chapter 299 of 1949 Session Laws of North Carolina. See *S. v. Denny, supra,* and cases cited.

And as stated in the *Denny* case, *supra,* quoting from *S. v. McMillan,* 233 N.C. 630, 65 S.E. 2d 212, "It is incumbent upon the court to so instruct the jury. In this the defendant has a substantive right. Therefore, any instruction, charge or suggestion as to the causes for which the jury could or ought to recommend is error sufficient to set aside a verdict where no recommendation is made." Contrary to this, in the instant case the trial judge inadvertently, no doubt, in stating contentions of the State declared to the jury that: "The State con-

tends that this defendant killed Mr. Nodine in robbing him, and that your verdict should be guilty of murder in the first degree without any recommendation, that is, punishment be imprisonment for life." And the "State contends that this crime denotes a mind fatally bent on mischief, that a man who would kill a man in this fashion, in the fashion in which Mr. Charles Otis Nodine was killed, and who was then able to continue riding around the country in his automobile, and sleeping in his automobile as though nothing had happened, is a very cool calculated person. And the State contends that there are no circumstances in this case which would justify you in exercising your discretion in favor of a life sentence for this defendant. The State contends that your verdict should be guilty of murder in the first degree." Defendant properly excepts to the quoted language.

And the Attorney General in brief filed concedes that the State is unable to distinguish the foregoing portion of the charge from that condemned by this Court in the case of *S. v. Oakes, supra,*— an error in the charge of which the Court will take note *ex mero motu,* citing *S. v. Oakes, supra,* and *S. v. McCoy,* 236 N.C. 121, 71 S.E. 2d 921.

Furthermore, considering the evidence offered by the State in the light most favorable to the State, it appears sufficient to withstand motion for judgment as of nonsuit— to the denial of which defendant excepts.

Since there is to be a retrial other assignments of error need no express consideration.

For error pointed out, there will be a
New Trial.


DENNY, J., Concurring: Prior to 1941 a verdict of guilty of any of the four capital crimes — murder, rape, burglary or arson — meant a mandatory death sentence, except in first degree burglary.

Chapter 434, Laws of North Carolina, Session of 1889, section 3 thereof, codified later as CS 4641, now G.S. 15-171, provided: "That when the crime charged in the bill of indictment is burglary in the first degree, the jury may render a verdict of guilty of burglary in the second degree if they deem it proper so to do."

In the case of *S. v. Johnson,* 218 N.C. 604, 12 S.E. 2d 278, decided at the Fall Term 1940 and filed 20 December 1940, this Court held that CS 4641 did not authorize an instruction that the jury might render a verdict of burglary in the second degree in its discretion, irrespective of the evidence. *Stacy, C. J., Barnhill, J.,* later C. J., and *Winborne, J.,* now C. J., each wrote vigorous dissenting opinions.

*Stacy, C. J.*, said: "Our previous decisions are to the effect, that on an indictment for burglary in the first degree, the *defendant* is not entitled as a matter of right to have the case submitted to the jury on the charge of burglary in the second degree unless there is evidence to support the milder verdict. CS 4640. *S. v. Johnston,* 119 N.C. 883, 26 S.E. 163; *S. v. Cox,* 201 N.C. 357, 160 S.E. 358; *S. v. Morris,* 215 N.C. 552, 2 S.E. 2d 554. This is far from saying, however, that in such a case, the jury may not render a verdict of burglary in the second degree 'if they deem it proper so to do.' Both the legislative will as expressed in the statute, CS 4641, and the pertinent decisions on the subject are to the contrary. *S. v. Alston,* 113 N.C. 666, 18 S.E. 692; *S. v. Fleming,* 107 N.C. 905, 12 S.E. 131."

The General Assembly of North Carolina at its very first opportunity enacted Chapter 215 of the Public Laws of 1941. This act added the following provisos to CS 4233, the burglary statute, and CS 4238, the arson statute: "Provided, if the jury shall so recommend. the punishment shall be imprisonment for life in the State's Prison."

At the same session, the General Assembly enacted Chapter 7 of the Public Laws of 1941, amending CS 4641 to read as follows: "When the crime charged in the bill of indictment is burglary in the first degree the jury, upon the finding of facts sufficient to constitute burglary in the first degree as defined by statute, may elect to render a verdict of guilty of burglary in the second degree if they deem it proper so to do. The judge in his charge shall so instruct the jury."

In 1943, CS 4233 became G.S. 14-52, and CS 4238 became G.S. 14-58, the language including the provisos remaining the same, and CS 4641 became G.S. 15-171.

At the Spring Term 1949 of this Court *S. v. Mathis,* 230 N.C. 508, 53 S.E. 2d 666, was decided. The defendant had been convicted of first degree burglary and sentenced to death. On appeal, the defendant contended that the trial judge erred in not instructing the jury in respect to the right of the jury under G.S. 14-52 to return a verdict of guilty of burglary in the first degree and to recommend in connection therewith that punishment therefor shall be imprisonment for life in the State's Prison. *Winborne, J.,* now C.J., in speaking for the Court said: "The proviso in the statute was added by the General Assembly of 1941 (P.L. 1941, Ch. 215). Before the enactment of it, a verdict of guilty of burglary in the first degree made death sentence mandatory. But since the enactment of it, when a jury in returning a verdict of guilty of burglary in the first degree recommends imprisonment for life, the death penalty is thereby eliminated, and sentence of life imprisonment is mandatory. Thus a substantial right

is created by the proviso in G.S. 14-52 in favor of one charged with burglary in the first degree. And in such case, it is the duty of the trial judge under the provisions of G.S. 1-180 'to declare and explain the law arising thereon.'

"Moreover, G.S. 15-171 provides that 'where the crime charged in the bill of indictment is burglary in the first degree the jury, upon the finding of facts sufficient to constitute burglary in the first degree as defined by statute, may elect to render a verdict of guilty of burglary in the second degree if they deem it proper so to do,' and 'the judge in his charge shall so instruct the jury.' See *S. v. Surles, ante,* 272.

"Therefore, taking the two statutes together, G.S. 14-52 and G.S. 15-171, when in a case in which the charge is burglary in the first degree the jury finds from the evidence and beyond a reasonable doubt facts constituting burglary in the first degree, one of three verdicts may be returned. (1) Guilty of burglary in the first degree, which carries a mandatory death sentence; (2) Guilty of burglary in the first degree, with recommendation of imprisonment for life, which calls for a sentence to life imprisonment; and (3) if the jury 'deem it proper so to do,' Guilty of burglary in the second degree, for which the sentence may be life imprisonment, or imprisonment for a term of years in the discretion of the judge, all in accordance with the statutes."

In 1947 the General Assembly of North Carolina created a study commission for the purpose of making a study and submitting recommendations to the 1949 Session of the General Assembly for the improvement of the administration of justice in the State of North Carolina. Among the recommendations made pursuant to this study was the following: "We propose that a recommendation of mercy by the jury in capital cases automatically carry with it a life sentence. Only three other states now have the mandatory death penalty and we believe its retention will be definitely harmful. Quite frequently, juries refuse to convict for rape or first degree murder because, from all the circumstances, they do not believe the defendant, although guilty, should suffer death. The result is that verdicts are returned hardly in harmony with evidence. Our proposal is already in effect in respect to the crimes of burglary and arson. There is much testimony that it has proved beneficial in such cases. We think the law can now be broadened to include all capital crimes." Popular Government, published by the Institute of Government, University of North Carolina, Chapel Hill, North Carolina, January issue 1949.

The General Assembly in 1949, following the recommendation of the study commission, enacted Chapter 299 of the Session Laws of

1949, providing that in all capital cases it should be in the discretion of the jury to recommend life imprisonment. The proviso reads as follows: "Provided, if at the time of rendering its verdict in open court, the jury shall so recommend, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury."

The identical proviso was enacted as a part of G.S. 14-17, relating to murder in the first degree; of G.S. 14-21, relating to rape or the carnal knowledge of any female child under the age of twelve years; of G.S. 14-52, relating to burglary in the first degree; and of G.S. 14-58, relating to arson. G.S. 15-171 was repealed by Ch. 100, Session Laws of 1953.

Consequently, at the present time, in any capital case the jury has the "unbridled discretion" to recommend that the punishment be imprisonment for life in the State's Prison, "and the court shall so instruct the jury."

The 1949 proviso has been construed in the following cases in the manner hereinafter indicated.

In *S. v. McMillan*, 233 N.C. 630, 65 S.E. 2d 212, the trial judge instructed the jury to the effect that they might recommend life imprisonment if the jury felt "under the facts and circumstances of the crime alleged to have been committed by the defendant, they are warranted and justified in making that recommendation." *Winborne, J.*, now C.J., in speaking for the Court said: "It is patent that the sole purpose of the act is to give to the jury in all cases where a verdict of guilty of murder in the first degree shall have been reached, the right to recommend that the punishment for the crime shall be imprisonment for life in the State's prison. (Compare *S. v. Shackleford*, 232 N.C. 299, 59 S.E. 2d 825.) No conditions are attached to, and no qualifications or limitations are imposed upon, the right of the jury to so recommend. It is an unbridled discretionary right. And it is incumbent upon the court to so instruct the jury. In this, the defendant has a substantive right. Therefore, any instruction, charge or suggestion as to the causes for which the jury could or ought to recommend is error sufficient to set aside a verdict where no recommendation is made."

In the case of *S. v. Marsh*, 234 N.C. 101, 66 S.E. 2d 684, among other things, the court below charged: "You may, for any reason and within your discretion add to that the recommendation, if you desire to do so, that he be imprisoned for life, in which event that disposition will be made of the case." This Court upheld the charge.

In *S. v. Simmons*, 234 N.C. 290, 66 S.E. 2d 897, the court instructed

the jury: " * * * if you should return a verdict of guilty of murder in the first degree, it would be your duty to consider whether or not under the statute, you desire and feel that it is your duty to recommend that the punishment of the defendant shall be imprisonment for life in the State's prison." A new trial was granted. In the same case, 236 N.C. 340, 72 S.E. 2d 743, the charge with respect to life imprisonment was again held to be erroneous.

In the case of *S. v. Dockery,* 238 N.C. 222, 77 S.E. 2d 664, a private prosecutor, in making his argument to the jury, said: "There is no such thing as life imprisonment in North Carolina." This argument was made as a part of counsel's plea for a verdict of guilty of murder in the first degree without recommendation that punishment be life imprisonment. The reason advanced by counsel in support of this argument was that, in cases where sentences are for life imprisonment, petitions are filed for commutation; that the commutations are allowed and persons thus sentenced to life imprisonment are finally paroled and allowed to go free. This Court ordered a new trial.

This Court has consistently and without exception adhered to its decisions with respect to the "unbridled discretion" of the jury to make recommendations for life imprisonment in the State's Prison in cases where a defendant was found guilty of a capital offense, as laid down in *S. v. McMillan, supra.* See *S. v. Conner,* 241 N.C. 468, 85 S.E. 2d 584; *S. v. Carter,* 243 N.C. 106, 89 S.E. 2d 789; *S. v. Adams,* 243 N.C. 290, 90 S.E. 2d 383; *S. v. Cook,* 245 N.C. 610, 96 S.E. 2d 842; *S. v. McAfee,* 247 N.C. 98, 100 S.E. 2d 249; *S. v. Bunton,* 247 N.C. 510, 101 S.E. 2d 454; *S. v. Denny,* 249 N.C. 113, 105 S.E. 2d 446; *S. v. Oakes,* 249 N.C. 282, 106 S.E. 2d 206.

As this question has been involved in twelve previous appeals since the statute was enacted in 1949, it has been my impression that it has been the consensus of the members of the Court that neither a solicitor nor a private prosecutor has any right to argue or contend that a jury should not, under the facts and circumstances in a capital case, withhold and refuse to exercise that "unbridled discretion" expressly granted to them by the General Assembly. In the exercise of such discretion they may recommend life imprisonment for any reason or for no reason at all. It follows, therefore, that it is error for the trial judge to give as a contention of the State that the verdict of the jury should be guilty of murder in the first degree without any recommendation that the punishment shall be life imprisonment in the State's Prison. Why is this so? It must be conceded that in any capital case if the evidence is sufficient to justify the jury in finding

beyond a reasonable doubt that the defendant is guilty of the crime charged, and the jury so finds, then he must suffer death unless in the discretion of the jury it makes the recommendation for life imprisonment as authorized by law. From the defendant's standpoint, such recommendation is not a matter of right in any sense, but an exercise of grace, placed exclusively and unconditionally within the discretion of the jury and no one else.

A solicitor or a private prosecutor has as much latitude as he has ever had in making a legitimate argument for a conviction in a capital case, but when he has tried his case and made his argument to the jury, and properly developed his evidence, tending to show the guilt of the defendant beyond a reasonable doubt of the capital offense charged, it is no official concern or responsibility of his whether or not the jury exercises the right of discretion to recommend life imprisonment in the State's Prison.

In view of the history of the legislation involved and the recommendations of the study commission in 1949, it is apparent that juries were bringing in verdicts of murder in the second degree in too many cases in which the evidence warranted a conviction of first degree. In an effort to improve the administration of justice in that respect, the unconditional right to recommend life imprisonment in the State's Prison was granted to the jury, although the evidence warranted a conviction that had theretofore carried a mandatory sentence of death. In fact, it all comes to this: The jury in such cases has been entrusted with the State's conscience or power to extend grace with respect to the punishment to be meted out as between life and death in capital cases — not the judge nor the solicitor.

There are other reasons why this Court should adhere to its former decisions on the questions now before us. It is said in 14 Am. Jur., Courts, section 66, page 287, et seq.: " * * * It has been said that the court of last resort of a state will not overrule one of its prior decisions construing a statute where the legislature has held several sessions since such decision without modifying or amending the statute because it may be claimed justly that the legislature has acquiesced in the decision, and therefore a fair case is presented for the application of the doctrine of stare decisis."

In Gill v. Commissioners, 160 N.C. 176, 76 S.E. 203, 43 L.R.A. (N.S.) 293, the question before the Court was whether or not the statutory phrase "freeholders within the proposed special school district" embraced female as well as male freeholders in voting for a proposed school tax. The lower court held that it did. On appeal this Court reversed and said: "The Legislature has never, as yet, en-

dowed women with the right to participate in governmental affairs, for reasons satisfactory to itself. * * * We must accept it and enforce it as we find it, and not as we may think it should be, as we do not make the law, but merely declare what it is. * * * (A)ny such * * * change * * * should originate in the Legislature. * * *

"It is inconceivable that a consistent and persistent construction given to similar statutes by the Superintendent of Public Instruction and his legal adviser, the Attorney General, for so long a time, should have escaped the attention of the Legislature, and its silence may be safely construed as an assent to their interpretation of the word. * * * It is easy for the Legislature to change that meaning if, in its wisdom, a different policy should be inaugurated. Until that is done, we will stand by the ancient and settled rule of interpretation. 'A contemporary exposition, practiced and acquiesced in for a period of years, fixes the construction, unless contrary to the obvious meaning of the words.' "

In *Williamson v. Rabon*, 177 N. C. 302, 98 S. E. 820, we find: "The doctrine of *stare decisis* or the principle of adherence to judicial precedents is fully established in this State, and in proper instances will continue to be steadfastly upheld. * * * While a single decision may become a precedent sufficiently authoritative to protect rights acquired during its continuance, such a case more frequently occurs in the construction of statutes applicable, in which case an authoritative interpretation, formally made by a court of last resort, is thereafter considered a part of the law itself * * *."

In 21 C.J.S., Courts, section 214, page 388, et seq., we find this statement: "The doctrine of *stare decisis* applies with full force to decisions construing statutes or ordinances. In fact, when a statute has been judicially construed by the highest court having jurisdiction to pass on it, such construction is as much a part of the statute as if plainly written into it originally."

It would seem, therefore, that a uniform interpretation placed upon a proviso in a statute in a dozen cases over a period of approximately eight years is sufficient to establish the doctrine of *stare decisis*, and if the meaning of the statute has been misinterpreted by the Court, the Legislature ought to say so and not the Court.

I vote for a new trial.

HIGGINS, J., dissenting: To dissent from an opinion awarding a new trial to an unfortunate human being under sentence of death is not easy. Added to the difficulty in this case is the fact the Attorney General confesses he is unable to distinguish between the charge here

challenged and similar charges which have been held as error in past decisions of this Court. Only the firm and settled conviction the former decisions are erroneous in the particular here involved induces me to record my objection.

The amendment in question was added to a section of the statute entitled: "MURDER IN THE FIRST AND SECOND DEGREE DEFINED; PUNISHMENT." Before the amendment, the statute provided that murder in the first degree "shall be punished with death." The amendment added, "Provided, if at the time of rendering its verdict in open court, the jury shall so recommend, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury."

The recommendation must be made at the time, and as a part of the verdict. By authorizing and empowering the jury to determine whether the punishment shall be death or life imprisonment, I think it was contemplated the determination would be made upon the basis of the evidence in the case and after its full consideration. In passing on the question of guilt and of the degree thereof, decision must be made upon the evidence and applicable law. The amendment makes no provision for the court or the jury to restrict or to enlarge the scope of the inquiry. Certainly the amendment fails to make provision for hearing of the evidence not otherwise competent on the general issue of guilt or innocence. This failure lends support to the view that the jury must base its recommendation on the evidence, for surely it was intended that the recommendation should be based on something other than whim. The jury has discretion, of course, but the manner of its exercise surely should be governed by the evidence. Pertinent here is a quotation from Vol. 32, N. C. L. Review, p. 439: "The 1949 amendment, making capital punishment in first degree murder cases discretionary has been construed to give the jury an 'unbridled discretion.' The jurors' power of mitigation is absolute; it may apparently proceed from any assumption which the jurors wish to make; and any doubt as to the procedural implications of this will be dispelled by a glance at *State v. McMillan* and *State v. Simmons*, two recent cases in which the Court reversed trial judges who suggested — by even the faintest inference — that the jurors should look to the 'facts and circumstances' of a case in deciding the defendant's punishment. Thus, the trial judge is totally confined, and the jury perforce is totally unconfined; it may roam at will in selecting reasons for or against death."

A proviso in the same words as here involved was made applicable to a conviction for rape. In the case of *State v. Shackleford*, 232 N.C.

299, 59 S.E. 2d 825, the present Chief Justice I think correctly interpreted the meaning of the Statute: "However, it is clear from a reading of the amendment that the General Assembly did not attempt to make any change in the elements constituting the crime of rape, or in the rules of evidence applicable in the trial on a charge of rape. Rather, it is patent that the sole purpose of the act is to give to the jury the right *on the evidence in the case* to render a verdict of guilty of rape, with recommendation of life imprisonment, even though the jury may find facts sufficient to constitute rape as defined by the statute." (emphasis added)

In the case of *State v. McMillan*, 233 N.C. 630, 65 S.E. 2d 212, the trial court had charged that the jury had the right and the power, in its discretion, to accompany the verdict (murder in the first degree) with a recommendation of life imprisonment if the jury felt that the facts and circumstances warranted the recommendation. "That is a matter to be exercised by you gentlemen, in your own discretion." This Court held the instruction erroneous and said: "Therefore, any instruction, charge or suggestion as to the causes for which the jury could or ought to recommend is error sufficient to set aside a verdict where no recommendation is made." In the *Shackleford* case the Court held the jury had the right on the evidence in the case to render a verdict of rape with recommendation of life imprisonment. In the *McMillan* case the Court held that any instruction, charge or suggestion as to causes for which the jury ought to recommend life imprisonment is error.

In the case of *State v. Dockery*, 238 N.C. 222, 77 S.E. 2d 664, counsel for the private prosecution in the argument against a recommendation of life imprisonment, said: " . . . in cases where sentences are for life imprisonment, petitions are filed for commutation; that the commutations are allowed and persons thus sentenced to life imprisonment are finally paroled and allowed to go free." The argument was held to be improper because based on matters *dehors* the record. This Court, however, correctly stated the applicable rule: "It is generally recognized that wide latitude should be given to counsel in making their arguments to the jury. *State v. Bowen*, 230 N.C. 710, 55 S.E. 2d 466; *State v. Little*, 228 N.C. 417, 45 S.E. 2d 542. Even so, counsel may not go outside the record and inject into their arguments facts not included in the evidence." The inference is plain that argument on the question of recommendation is proper if based on the evidence.

In the case of *State v. Oakes*, 249 N.C. 282, 106 S.E. 2d 206, this Court for the first time has said, inferentially, that it is error for the

State to argue in a capital case that the evidence does not warrant a recommendation of life imprisonment. In that case the trial court charged: "The State says and contends that your verdict should be murder in the first degree; that your verdict should stop there and that you should not recommend that his punishment be imprisonment for life." If it is error for the judge to state the contention, it must be error for the solicitor to make it. If the State cannot argue the question, the defense should not. The concurring opinion in this case agrees with this view. I have no complaint with the statement that the proviso gives the jury discretion. But the jury should hear the evidence and the argument on the evidence, and the court's charge before exercising the discretion. Discretion is not license. The Court is now holding in effect that counsel must not contaminate the jury with any argument as to the bearing the evidence should have on the recommendation. The Court is thus building around the right and duty of passing on the question of life imprisonment a barricade and has in effect put up a sign, "Under quarantine. Discussion forbidden."

My view differs from the Court in this respect. I think the jury should hear the evidence, proper argument based thereon, and the charge of the court fairly reviewing the contentions upon the evidence, and then exercise its discretion. It seems to be the majority view that the jury should hear the evidence but should not hear argument or analysis of the evidence and the trial court must not state the contentions of counsel arising on the evidence. The trouble has arisen, I think, because of a picturesque and catchy, but inaccurate and unfortunate statement that the jury has unbridled discretion. Discretion involves the exercise of judgment based on facts. Unbridled conduct is based on whim or fancy.

From a comparison of the foregoing quotations from *State v. Shackleford* and *State v. McMillan* as to the meaning of the proviso, and from *State v. Dockery* and the present concurring opinion as to the scope of the argument, it appears there is not much upon which to call for the application of *stare decisis*. The decisions in material aspects are conflicting. "Much was said on the argument in favor of adhering to this recent decision, but the doctrine of *stare decisis* is not to be observed with inflexible strictness, especially where no rule of property is involved, and it should never be employed to perpetuate an error." *Spitzer v. Commissioners*, 188 N.C. 30, 123 S.E. 636.

In the case of *State v. Oakes, supra,* I agree that a new trial was required because of the admission over defendant's objection of the affidavit made by the deceased in a prior case. I also agree a new trial was required in *State v. Denny*, 249 N.C. 113, 105 S.E. 2d 446,

because of the announcement of the solicitor at the beginning of the trial and the form of the verdict.

For the reasons herein stated, I think the decision in *State v. Mc-Millan, supra,* was erroneous and that the error should not be perpetuated. In this case, I vote no error.

*Parker, J.,* has authorized me to say that he joins in this dissenting opinion.