Clarence PUGH, Petitioner,

v.

**STATE OF NORTH CAROLINA,**
Respondent.

Civ. No. 1494.

United States District Court
E. D. North Carolina,
Raleigh Division.

Feb. 2, 1965.

Cyrus F. Lee, Gardner, Connor & Lee, Wilson, N. C., for petitioner.

T. Wade Bruton, Atty. Gen., of North Carolina, by Theodore C. Brown, Jr., Staff Atty., Raleigh, N. C., for respondent.

LARKINS, District Judge.

## SUMMARY

This cause comes before the Court upon a petition in forma pauperis by a State prisoner for the great writ of habeas corpus pursuant to the provisions of Title 28 U.S.C.A. § 2241 et seq. Petitioner alleges that he has exhausted his available State remedies in compliance with Title 28 U.S.C.A. § 2254.

The petition was originally filed in this Court December 5, 1963, and respondent, State of North Carolina, made Answer and a Motion to Dismiss. The Motion was allowed without plenary hearing on January 9, 1964, this Court being of the opinion that the petition was without merit. The cause was then appealed to the United States Court of Appeals for the Fourth Circuit wherein it was reversed and remanded on September 10, 1964, 336 F.2d 508, with directions as follows:

"In response to the petition the State of North Carolina notes that neither the validity of the confession, nor the sufficiency of legal counseling at trial, have ever been brought to the State court's attention. From the papers before us we are unable to confirm or reject this suggestion; apparently it was not pressed before the District Judge.

\* \* \* \* \* \*

"In the circumstances we [should] set aside the order dismissing the petition and remand it for hearing. \* \* \*

"If the District Court finds these questions were presented, or they may not now be submitted, to the State court, the District Court should proceed to hear and rule on

the entire petition, especially in the particulars noted."

Pursuant to the mandate of the Court of Appeals, it was determined that the petitioner should be granted a plenary hearing before the Court relating to the matters set forth in the Opinion of the Court of Appeals, since the questions raised had not and could not now be submitted to the State court (see Opinion and Order dated the 30th day of December, 1964). A hearing was thereafter held on January 20, 21, and 22, 1965, at Raleigh, North Carolina, where, after examining the record, and hearing the testimony of numerous witnesses for the petitioner and respondent, and the argument of counsel, the Court makes the following

## FINDINGS OF FACT

On May 16, 1958, about midnight, petitioner was observed asleep in an automobile found to be registered in his name. The car was parked on the shoulder of U. S. Highway #70 in Burke County, North Carolina, west of the town of Glen Alpine, in the western part of the State and a short distance from petitioner's home.

A North Carolina State Highway Patrolman first observed petitioner asleep in his car and radioed Caldwell County Sheriff's Deputies, advising them of petitioner's presence. He requested them to bring a warrant which he believed had been previously issued for petitioner on a felony charge in order that an arrest could be made. The Highway Patrolman remained there in order to keep the petitioner under surveillance.

Upon the arrival of Deputy Sheriff Clarence Michels of Caldwell County, with the alleged warrant and another officer of Burke County, petitioner was arrested and his car and person were then searched. A weapon was found in the trunk of the car, which later proved to be the one used in the murder of one Charles Nodine in Lee County, North Carolina, in the eastern part of the State. This weapon was admitted into evidence against the petitioner at the trial and retrial.

Petitioner was advised he was being arrested pursuant to a warrant charging him with breaking, entering and larceny, but the warrant was not read to him, nor shown to him at that time.

Upon his arrest, petitioner was handcuffed and placed in a police car at about 1:00 a. m. on May 17, 1958. He was thereafter lodged in jail in Burke County at 1:40 a. m. and charged with felonious breaking and entering and larceny, to be held without bond.

Petitioner was then moved from the Burke County jail to the Caldwell County jail at about 3:00 a. m. the same morning, May 17, 1958, whereupon he was booked there for the felony of breaking, entering and larceny. The records of the Caldwell County jail indicate that he was not to be permitted bail although the offense charged was bailable.

Charles Nodine was killed in Lee County, North Carolina, on May 14, 1958, and the investigation of this murder had centered upon the petitioner prior to the time of his arrest in Caldwell County, petitioner's automobile and person having been identified by witnesses in the Lee-Chatham County area.

On May 18, 1958, petitioner was served with a warrant by an Agent of the State Bureau of Investigation charging him with the murder of Charles Nodine. This warrant was read to the petitioner in the presence of the Sheriff of Lee County and the Sheriff of Chatham County, after it was presented to petitioner. However, the warrant did not bear the official seal of the Clerk of the Superior Court of Lee County who had issued it.

While confined in the Caldwell County jail, petitioner requested the opportunity to consult with counsel, and to contact his family or friends. The requests were not granted and the petitioner was held incommunicado while the officers questioned him intermittently. There is evidence he was brutally assaulted by an officer.

Later, on May 18, 1958, petitioner was transferred from the Caldwell County jail to the Chatham County jail, an adjoining county to Lee County, and located a considerable distance from Caldwell County.

On May 19, 1958, while in jail in Chatham County, petitioner, after questioning, made an oral statement or admission relating to the killing of Charles Nodine in the presence of officers. However, he was not advised of his constitutional rights. This admission was later used against petitioner at his trials.

Petitioner was again questioned by an Agent for the State Bureau of Investigation on May 20, 1958, and a further admission was made in the nature of a confession. Petitioner refused to sign a written statement which was presented to him, but the oral statement was used against him in the trial for the killing of Charles Nodine.

The record does not disclose that petitioner's court-appointed counsel objected to the use of these confessions at his trials or upon his appeals. It is to be noted, however, that the question and answer transcript of the second trial of petitioner cannot be found although diligent search has been made for a copy.

Prior to making the oral statement to the Agent for the State Bureau of Investigation, the Agent advised petitioner that he would be entitled to the assistance of counsel appointed by the court at trial. No effort was then made, however, to obtain counsel for petitioner. He was further advised that any statement made by him could be used against him.

At the time both statements were made, petitioner was extremely nervous. He was also under the influence of some medication of an unidentified constituency, given to him by officers in order to quiet petitioner and help him control his highly nervous and emotional state. Petitioner was next moved to the Lee County jail on May 25, 1958, where he was arraigned on May 26, 1958, upon a true bill of indictment found by a grand jury that same day. Counsel was then appointed for petitioner. This arraignment took place almost ten days after his arrest and search without a valid warrant; no record of any warrant having been issued for the petitioner in Caldwell County has ever been found. This was the first opportunity afforded petitioner to appear before a legal tribunal of any type.

The next day, May 27, 1958, while confined in Lee County jail, petitioner was interviewed by a female newspaper reporter and he again made admissions relating to the Nodine murder, however, his conduct during the course of the interview was of such an emotional nature as to cause the reporter to inquire into the petitioner's well being and about his treatment while being confined.

This interview was not obtained with the permission of petitioner's counsel, and the statement given by petitioner was published in a local newspaper prior to his trial.

After the arraignment and appointment of counsel for petitioner, he was ordered committed to the State Hospital at Raleigh, North Carolina, for observation and treatment relating to his mental condition, pursuant to the provisions of North Carolina General Statute § 122–90. Petitioner was confined in said hospital for an extended period of some seventy days and he received a course of treatment designed to relieve mental disorders, psychotic in nature. He was given fourteen electric shock treatments, the results of which led the medical staff of the hospital to report that petitioner was then able to enter a plea to his murder indictment.

The petitioner's mental condition prior to trial, and at the time of his alleged crime, and at the time of his admissions, has not previously been determined and was not, therefore, offered nor entered into evidence at either trial.

Petitioner was first tried in 1958, and was found guilty by a jury which did not recommend mercy. He was sentenced to death by inhalation of deadly fumes (gas). Upon appeal to the Supreme Court of the State of North Car-

olina, a new trial was awarded. State v. Pugh, 250 N.C. 278, 108 S.E.2d 649 (1959).

Upon being retried, new counsel was appointed and petitioner was again found guilty, the jury making a recommendation of mercy. The sentence imposed was imprisonment for the life of petitioner. An appeal was again taken to the Supreme Court of North Carolina. The trial court was affirmed in a per curiam decision. State v. Pugh, 253 N.C. 427, 117 S.E.2d 2 (1960).

It is to be noted that in this second trial of 1960, the record of jurors actually serving is incorrect. A juror, William F. Brown, did serve but the record of the Clerk of the Superior Court of Lee County fails to disclose his presence upon the panel as a petit juror.

Thereafter, petitioner made application for a Post-Conviction Hearing in the State courts, and requested the appointment of counsel, which request was refused. The Judge Presiding over the Superior Court of Lee County did, however, review the record but denied a hearing and dismissed his application. No appeal was taken.

Application was next made to this Court for the great writ, and for the appointment of counsel.

Upon remand, the Court appointed Cyrus F. Lee, Esquire, of the Wilson, North Carolina Bar, to represent the petitioner. Petitioner has expressed complete satisfaction with the services rendered by counsel. The Court also acknowledges, with appreciation, the splendid effort and service of court-appointed counsel who has performed his duty in the highest tradition of the bar.

## CONCLUSIONS OF LAW

When all the facts are considered together, and when the petitioner is considered in the light of the situation in which he found himself, it becomes impossible for this Court to hold petitioner's confession to be voluntary. The circumstances surrounding the nature of his confinement and treatment during the period prior to his arraignment were in direct violation of protected rights by State and Federal enactments.[1] This is not a police state.

Petitioner was held in custody nearly ten days without the opportunity to consult with counsel, or confer with his own family and friends, or have his interests protected. He was questioned during this entire period intermittently, denied sleep and removed from one place to another, all the time being denied the opportunity to consult with counsel or friends, or appear before a committing magistrate. Other requirements such as being fully advised of his constitutional rights were not properly afforded petitioner.

These required procedures are not mere technicalities designed to serve as an obstacle course in order to prevent efficient law enforcement, but they are devices designed, as a result of hard and long experience, to insure the protection of those basic substantive rights which would otherwise be so easily lost. McNabb v. United States, 318 U.S. 332, 344, 63 S.Ct. 608, 87 L.Ed. 819 (1943).

The conduct of the State officers in this case was such that if Federal officers had been in their stead, then the confessions made during the period of incarceration in question would no doubt be inadmissible. See McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

The factual situation under which the confessions were obtained are such as to make them involuntary. In fact, the period of time during which a prisoner is held without communication with the outside world is a factor to be considered alone, in determining the validity of a confession. Ashcraft v.

1. United States Constitution, Amendment XIV; North Carolina Constitution, Article 1, Section Eleven; and Powell v.  State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

State of Tennessee, 322 U.S. 143, 64 S. Ct. 921, 88 L.Ed. 1192 (1944); and Watts v. State of Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949). When all the facts surrounding these confessions here are considered, they cannot be accepted for they do not meet the required standards of due process of law. Hall v. Warden, 313 F.2d 483 (4th Cir., 1963); Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); and Culombe v. State of Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

■ Today, there is no question that a State conviction cannot stand if there has been an involuntary confession used against the defendant. Stroble v. State of California, 343 U.S. 181, 190, 72 S.Ct. 599, 96 L.Ed. 872 (1952); Blackburn v. State of Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

■ It is to be remembered that although the petitioner's confessions are now determined to be involuntary, they were not objected to at trial by counsel, nor was the question raised upon appeal to either the Supreme Court of the United States or the Supreme Court of North Carolina. Can it then be said that the petitioner has waived the right to now collaterally attack the constitutionality of the admissions at the time of his trial? Hall v. Warden, 313 F.2d 483 (4th Cir., 1963).

It is clear that in petitioner's situation he did not waive the right to protest the use of his confessions. Without determining any particular factual element as controlling, the Court only notes that there are many factors, and petitioner in his petition has set forth sufficient issues and produced evidence to make it clear that the question of the voluntariness of his confessions is not the only consideration before the Court.

Petitioner has attacked the adequacy of his legal counsel at the trials. Counsel here presses the point that *no* counsel was afforded petitioner from the time of his arrest until his arraignment almost ten days later. He insists that the lack of the "guiding hand of counsel" during every stage of the accusation, after petitioner becomes the accused, supports the assertions of lack of adequate counsel, as well as the other contentions of lack of constitutionally protected rights. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

Petitioner has set forth facts indicating that there is now a serious question pertaining to his mental competency at the time of the commission of the crime, and at the time of the making of the confessions. For these reasons the Court finds that petitioner's failure to raise these issues at trial were excusable. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837 (1963); and Jackson v. Denno, 378 U.S. 368, 370 footnote #1, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

The question of the legality of the arrest and search and seizure has been determined in favor of the petitioner.

## ORDER

Therefore, it is ordered that the respondent's Motion to Dismiss be, and the same is hereby denied.

It is further ordered that the petitioner be released, conditioned upon the failure of the State to retry him within a reasonable time. Counsel will be heard at their earliest convenience on the question of fixing such reasonable time. (It is to be noted that petitioner is serving a five (5) year sentence for a crime against nature, (Wake County—March 1961—#6435) which was ordered to run concurrently with the life sentence imposed in Lee County. This sentence will expire March 20, 1966). This is not disturbed.

It is further ordered that the Clerk serve a copy of this opinion and order upon The Honorable Thomas Wade Bruton, Attorney General for the State of North Carolina, Raleigh, North Carolina; Honorable George W. Randall, Director, North Carolina Prison Department, Raleigh, North Carolina; Major H. A. Logan, Jr., Odom Prison, Route 1, P. O.

Box 36, Jackson, North Carolina; Mr. Cyrus F. Lee, Attorney at Law, P. O. Box 2047, Wilson, North Carolina; Mr. Ronald P. Sokol, Attorney at Law, University of Virginia School of Law, Charlottesville, Virginia; Clerk, United States Court of Appeals, Fourth Circuit, Richmond, Virginia; and petitioner, Clarence Pugh, Odom Prison, Route 1, P. O. Box 36, Jackson, North Carolina.