Nash, C. J.
 

 The indictment is for a burglary committed in the dwelling-house of Charles Smallwood. Burglary is a felony at common law; and a burglar is defined by Lord CoKE, 3rd Institute 63, to be “ one that, in the night time, breaketh and dntereth into a mansion-house of another, of intent to kill some reasonable creature, or to commit some other felony within the same, whether his felonious intent be executed- or not.” To a conviction, it is necessery to prove :
 
 fivt'st,
 
 the breaking;
 
 second,
 
 the entering;
 
 third,
 
 that the house broken and entered, is a mansion-house;
 
 fourth,
 
 that the breaking and entering was in the night time;
 
 fifth,
 
 that the breaking and entering were with intent to commit a felony..
 
 *352
 
 In all these particulars there must be proof satisfactory to tlie minds of the jury; and if the State fails upon any one point, the prisoner is entitled to an acquittal.
 

 The house entered, in this case, was the smoke-house of Dr. Smallwood. The first question is, did the smoke-house, at the time of the entry and breaking, constitute a part of the mansion-house? Upon this point, the evidence of Dr. Small-wood is, that he lived in Bertie County; that his smoke-house was about twenty-four yards from his dwelling, which was the usual place of his residence; the fence- enclosing the dwelling did not include the smoke-house, but all of this building was without the yard, except the front end, which formed a part of the yard fence, the door of the smoke-house opening into the yard; that he used the smoke-house for storing meat, and for all the purposes to which such buildings are ordinarily applied.
 

 For the prisoner, it is insisted that the smoke-house, in this case, constituted no part of the mansion-house, as it stood twenty-four yards from it, and was not included within the same common fence. The dwelling-house, at common law, includes, not only the premises actually used as such, but also such out-buildings as were within the curtilage, or court-yard, surrounding the mansion-house. Boscoe’s Crim. Ev. 348,362. The smoke-house was a building used with the dwelling-house, and necessary to it in this country ; and the only door it had, opened into the yard. In legal contemplation it was within the curtilage, as one side of it constituted a part of the common enclosure. This principle has been recognised in this State; the leading cases are those of the
 
 State
 
 v. Twitty, 1 Hay. 102 ;
 
 State
 
 v.
 
 Wilson,
 
 1 Hay. 242 ;
 
 State
 
 v. Langford, 1 Dev. 253. The objection, then, that the smoke-house was not a part of the dwelling-house, cannot be sustained. It was within the curtilage, and used with the dwelling-house.
 

 It is seen, that a part of the definition of burglary is, that the breaking and entering must be in the night time, and this must be proved by the State; for it is an essential allegation in the bill of indictment. There was no evidence to>
 
 *353
 
 show (hat this was the fact. Dr. Smallwood states that, about .sun-rise, one morning, ho found the door of the smoke-house open, and the articles specified, missing. The case does not state what white family he had, or where they slept that night. He further states, that he found the molasses still running out of the barrel on the floor. ITow much molasses was in the barrel the night before, or how much there was still in it — to what extent tire floor was covered with it, we are not informed. If it had been set to running in the night, it probably would have ceased running before morning; and the fact that it was still running, rebuts, the idea of its having been long in that situation, and is entirely consistent with the idea that it was set to running after day-light. On the part of the State, it was insisted that, as the prisoner was a runaway slave, it was more likely that it was done in the night, as he would be careful of showing himself in the day. This may be so, but from thence the law cannot presume the fact; and when the law does not presume the existence of a fact, there must be proof, director indirect, before the jury can rightfully presume it. 1
 
 Cobb
 
 v. Fogleman, 1 Ire Rep. 440 ;
 
 State
 
 v.
 
 Revels,
 
 Bus. Rep. 200. Here, there is neither direct, nor indirect proof that the entry was in the night. No proof whatever to ascertain that fact. Tiie inference drawn by the State, from the fact that the prisoner was a runaway slave, might well apply, if the’ question was whether he had committed the act, but has no bearing whatever in fixing- the time.
 

 Per Curiam. There is error, and must be a
 
 venire de novo.