STATE OF NORTH CAROLINA v. EDWARD KEITH TIPPETT.

(Filed 20 June, 1967.)

1. **Burglary and Unlawful Breakings § 4—**

Nonsuit *held* correctly denied in this prosecution for burglary in the first degree upon evidence sufficient to support a finding that the dwelling house in question was broken and entered into at nighttime with the intent to commit a felony specified in the bill of indictment, together with ample circumstantial evidence tending to identify defendant as the perpetrator of the offense.

2. **Burglary and Unlawful Breakings § 1—**

In order to constitute burglary it is not necessary to show physical damage to a door or window, but it is sufficient to show a mere opening of an unlocked door or the raising or lowering of an unlocked window.

3. **Burglary and Unlawful Breakings § 4—**

The State must prove that defendant, at the time of breaking, had the intent of committing a felony specified in the indictment, and defendant's commission of a felony conceived after the breaking will not support con-

STATE *v.* TIPPETT.

viction of burglary; nevertheless, defendant's intent may be found by the jury from evidence as to what defendant did within the house after breaking, and evidence that defendant actually committed after the breaking the felonies specified in the indictment, while not conclusive of the requisite intent, is evidence from which such intent may be inferred.

**4. Same—**

Stipulations by defendant that he owned keys found upon the floor of the dwelling immediately after an intruder had fled therefrom upon being apprehended after feloniously breaking and entering, is alone sufficient to support a finding that defendant was the intruder.

**5. Same—**

In order to establish that the breaking and entering occurred at nighttime it is not required that the actual entry be observed by an eye witness, but it is sufficient, in the absence of evidence to the contrary, that his presence in the building was first discovered during hours of darkness.

**6. Burglary and Unlawful Breakings § 6—**

When all the evidence tends to show that the dwelling broken and entered during the nighttime was actually occupied at the time, the court is not authorized to submit the question of defendant's guilt of burglary in the second degree.

**7. Same—**

Evidence which tends to show that the occupants of the dwelling in question were present in the house during the evening and night except for a half hour period after 11:00 p.m. and retired without going into one of the bedrooms, and that defendant was in the house less than an hour thereafter, *held* to require the submission to the jury of the question of defendant's guilt of burglary in the second degree, since, under the evidence defendant might have entered the dwelling while it was unoccupied.

**8. Arrest and Bail § 3;  Searches and Seizures § 1—**

Some two hours after a felonious breaking, officers apprehended a person, answering the description of the perpetrator, hiding behind a bush two blocks from the scene of the crime. *Held:* Under the circumstances it was lawful for the officer to arrest such person without a warrant and, as an incident to the arrest, to search him and take from him any property which might be competent as evidence in proving his guilt.

**9. Same—**

Where the circumstances are such as to authorize a police officer to arrest defendant without a warrant, it is not required, as a prerequisite to a search incidental to the arrest, that the officer make a formal declaration of arrest, and it is sufficient if the officer tells defendant upon apprehending the defendant near the scene of the crime to get into the police car and advises him to take his hands out of his pockets. Fourth and Fourteenth Amendments to the Constitution of the United States.

**10. Constitutional Law § 33—**

The State may require defendant, under valid arrest, to change his clothes and to take from him the clothing which he wore at the time of his arrest immediately after the commission of the alleged offense, and

introduce such clothing in evidence, the clothing being competent for the purpose of identification.

**11. Criminal Law § 87—**

Defendant's motion to consolidate the indictment upon which he was being tried with another indictment pending against him, is addressed to the discretion of the trial court, and the denial of the motion will not be disturbed.

**12. Criminal Law § 26—**

The fact that an indictment for burglary in the first degree specifies that the felonies defendant intended to commit at the time of breaking were larceny and rape, does not warrant the deletion from the indictment of the charge of intent to commit rape, even though another indictment is pending against defendant charging the crime of rape, the question of double jeopardy not arising in the trial under the first indictment.

**13. Criminal Law §§ 70, 81—**

Where defendant offers no evidence and the State introduces no evidence of any statement made by defendant, the exclusion of cross-examination by defendant of a State witness relative to a statement made by defendant to the witness cannot be competent for the purpose of corroboration of defendant or impeachment of any witness for the State, but must be for the purpose of eliciting a self-serving declaration by defendant, incompetent as hearsay, and the court's ruling sustaining objection to the cross-examination cannot be held an expression of opinion concerning defendant's credibility.

**14. Criminal Law § 124—**

Motion for a mistrial on the ground of prejudicial publicity in a newspaper, *held* properly denied when the evidence tends to show that no juror read or heard of such publicity.

APPEAL by defendant from *McKinnon, J.,* at the 28 November 1966 Criminal Session of DURHAM.

The defendant was tried under an indictment, proper in form, charging him with first degree burglary. It charges that he broke and entered a dwelling house actually occupied at or about 1 a.m. with the felonious intent to steal goods therein, and the felonious intent to commit rape upon the woman occupant thereof. He was found guilty of second degree burglary and sentenced to confinement in the State Prison for not less than 18 and not more than 25 years. In addition to numerous assignments of error directed to portions of the judge's charge to the jury, to rulings upon the admission of evidence and other rulings in the progress of the trial, the defendant contends that there was error in the denial of his motion for judgment of nonsuit.

The defendant offered no evidence. That introduced by the State, if true, shows:

On the evening of 4 August 1966, Mr. and Mrs. Patton had an-

STATE v. TIPPETT.

other couple as dinner guests in their home. The party broke up at about 11 p.m., Mr. and Mrs. Patton then taking the guests to their own home, leaving the Patton home unoccupied until their return at 11:30 p.m. or shortly thereafter. Upon their return, Mr. Patton locked the front door and went immediately to bed and to sleep without determining whether the back door was or was not locked. Mrs. Patton went into the kitchen, observed the outside door was closed, though she did not determine whether it was locked, went to bed in a room adjoining that occupied by her husband, having turned out all lights elsewhere in the house, read for a while, then switched off the light and went to sleep shortly after 12:30 a.m. August 5. Neither of them went into a third bedroom of the house after their return from taking their guests home.

Mrs. Patton awakened and observed through the doorway into the darkened hall a still darker object moving toward her from the direction of the room in which Mr. Patton was sleeping. "Afterwards," she said, "a man swiftly came into my room, leaped upon my bed, leaped upon me, and went into the sexual act." After a brief interval she shoved him off the bed and called out to her husband, who immediately turned on the light in his room and ran into the hall. The intruder fled from the house through the kitchen door. Mr. Patton, in pursuit, saw the kitchen door then standing open and the kitchen light on. The door was not damaged. Mr. Patton ran back to the front door, unlocked and opened it, turned on the outside light and saw a barefooted white man, not a blond, wearing rough work clothes, run down the driveway to the street.

Neither Mr. nor Mrs. Patton was able positively to identify the defendant as the man in their home. Neither had ever seen him before. He had no permission to be there. In her contact with the intruder in the dark bedroom, Mrs. Patton did not see the intruder's face but, on cross examination, testified that she could then tell that he was wearing clothing "that felt like canvas or denim," and had in the pocket thereof some heavy object.

The police were called immediately and the first officers arrived in front of the Patton home at 1:19 a.m. A red and white Rambler station wagon, later found to be registered in the name of the wife of the defendant, was parked on the street. They saw a man moving on the right side of it as if trying to hide. When one of the officers got out of the police car, this man fled and was pursued unsuccessfully by the officer, who saw his face and recognized him as the defendant. He was dressed in dark clothing and was barefooted.

The first officers to enter the Patton house found some keys lying on the floor, just inside the front door. The defendant stipulated at the trial that these were his keys. With one of them, the officers,

in the absence of the defendant, started the Rambler station wagon. The officers also found on the floor on one side of Mrs. Patton's bed a closed pocket knife, which did not belong to Mr. Patton, and, on the other side of the bed, a can of beer which was still cold and lay on its side. Three cans of beer were missing from the Patton refrigerator. The can upon the floor was the same brand and had upon it the same number, "AB-44." The knife and can of beer had been discovered on the floor by Mr. or Mrs. Patton before the officers arrived. The officers found no evidence of a struggle in the bedroom and no sign of damage to the kitchen door, either the wooden or the screen door.

When Mr. Patton retired at 11:30 p.m., he placed his wallet, containing two or three five dollar bills and three one dollar bills, on a chest in his room. At 8 a.m. the next morning the wallet was still there but empty. When the defendant was apprehended, his wallet contained, among other bills, three five dollars bills and three one dollar bills.

At approximately 3 a.m. or 3:30 a.m., two other police officers, driving along the second street over from that on which the Patton residence is located, observed the defendant leaning against a brick wall behind a bush a few feet off the street and between two houses. He was wearing coveralls and was barefooted. One of the officers approached him and "told him to go on to the car." Upon arrival at the car, the defendant put his hands in his pockets, whereupon the officer "advised him to get his hands out of his pockets." The officer then searched him. He found in the defendant's pockets two cold cans of beer of the same brand and with the same marking as the cans in the Patton refrigerator, and also a bottle containing two white pills subsequently identified as Amphetamine, a central nervous system stimulant, the effect of which is to keep one awake. The beer and the pills were introduced in evidence over objection.

On *voir dire,* this officer testified that he was looking for a man "wearing coveralls and barefooted," having been informed of the commission of the offenses at the Patton residence. He was not certain that the defendant was the man they were looking for and, consequently, did not tell the defendant he was under arrest or advise the defendant of his constitutional rights. He had no warrant. He asked the defendant, "Did he mind" going over to the Patton house. The defendant was taken by this officer to the Patton residence and turned over to the officers there, who promptly placed him under formal arrest and advised him of his right to remain silent, which he did.

On *voir dire,* another officer testified that at approximately 7

a.m. at the police station, he took from the defendant the clothing which the defendant was wearing at the time of his arrest, his wife having brought to the police station a change of clothing for him pursuant to a telephone call to her by the officers. Before the clothing was taken from the defendant, his wife and he were permitted to confer alone at length. He was then under arrest and accused of the crimes of burglary and rape, but no warrant had been issued. The defendant was then informed of his right to have an attorney present during his interrogation and his right to use the telephone for that purpose. He was also told that if he was not able to employ an attorney the State would supply one for him during the interrogation, that he could remain silent and that any statement he made could be used against him. No statement made by the defendant was offered in evidence. The defendant's wife testified on *voir dire* that she called the attorney who represented him at the trial and upon this appeal. The attorney instructed her to tell the defendant not to answer any questions until he arrived, which advice she transmitted to the defendant. Thereafter, the officers requested him to remove the clothing and deliver it to them, which he did. He was not told that he had a right to keep his clothes.

Over objection, the State was permitted to offer in evidence the shirt so taken from the defendant and a hair found thereon. An agent of the Federal Bureau of Investigation testified that he compared the hair with specimens of the hair of Mrs. Patton and, in his opinion, the hair found on the defendant's shirt "possessed the same microscopic characteristics as many of the brown hairs" so taken from the head of Mrs. Patton. The hair found upon the shirt had tissue adhering to it which, in the opinion of the witness, indicated that the hair had been removed from the scalp by force. The remaining articles of clothing so taken from the defendant were identified as exhibits but were not offered in evidence. A police officer testified that the report of the Federal Bureau of Investigation with reference to these articles was negative.

*Attorney General Bruton, Staff Attorney Partin and Staff Attorney White for the State.*
*Arthur Vann for defendant appellant.*

LAKE, J. The motion for judgment of nonsuit was properly overruled. The evidence is ample to support a finding of each element of the crime of burglary, these being the breaking and entering in the nighttime of the dwelling house or sleeping apartment of another with the intent to commit therein a felony, which felony must

be specified in the bill of indictment. *State v. Surles,* 230 N.C. 272, 52 S.E. 2d 880; *State v. Whit,* 49 N.C. 349.

To show a breaking it is not required that the State offer evidence of damage to a door or window, it being sufficient to show a mere pushing or pulling open of an unlocked door or the raising or lowering of an unlocked window, *State v. McAfee,* 247 N.C. 98, 100 S.E. 2d 249, or the opening of a locked door with a key. *State v. Knight,* 261 N.C. 17, 134 S.E. 2d 101.

The intent with which an accused broke and entered may be found by the jury from evidence as to what he did within the house. *State v. Reid,* 230 N.C. 561, 53 S.E. 2d 849. However, the fact that a felony was actually committed after the house was entered is not necessarily proof of the intent requisite for the crime of burglary. It is only evidence from which such intent at the time of the breaking and entering may be found. Conversely, actual commission of the felony, which the indictment charges was intended by the defendant at the time of the breaking and entering, is not required in order to sustain a conviction of burglary. *State v. Reid, supra; State v. Hooper,* 227 N.C. 633, 44 S.E. 2d 42; *State v. McDaniel,* 60 N.C. 245. The offense of burglary is the breaking and entering with the requisite intent. It is complete when the building is entered or it does not occur. A breaking and an entry without the intent to commit a felony in the building is not converted into burglary by the subsequent commission therein of a felony subsequently conceived. *State v. Allen,* 186 N.C. 302, 119 S.E. 504.

The indictment in the present case charges that the breaking and entering was with the intent to commit both the felony of larceny and the felony of rape within the Patton dwelling house. Proof of the intent to do either of these felonious acts within the house is sufficient to show this element of the crime of burglary. The evidence is ample to support the finding that the intruder committed larceny of money and beer from the Patton residence and, while therein, assaulted Mrs. Patton with the intent to commit the crime of rape. In the absence of contrary evidence, this is sufficient to support a finding that at the time of the breaking and entering, the intruder had the intent to commit one or both of these felonies within the dwelling. *State v. Boon,* 35 N.C. 244.

The defendant has stipulated that the keys found upon the floor of the Patton home immediately after the intruder had fled therefrom were his. This alone is sufficient to support a finding that the defendant was the intruder. In order to establish that the breaking and entry occurred in the nighttime, it is not essential that the actual entry be observed by a witness, it being sufficient, in the absence

of evidence to the contrary, that his presence in the building was first discovered during the hours of darkness. See *State v. McKnight*, 111 N.C. 690, 16 S.E. 319. It is inconceivable that the entry in this instance occurred prior to the dinner party in this relatively small residence.

If the burglary occurred — *i.e.*, the breaking and entry occurred — while the dwelling house was actually occupied, that is, while some person other than the intruder was in the house, the crime is burglary in the first degree. If the house was then unoccupied, however momentarily, and whether known to the intruder or not, the offense is burglary in the second degree. Otherwise, the elements of the two offenses are identical. G.S. 14-5. This Court has held that where all the evidence is to the effect that the building was actually occupied at the time of the breaking and entry, the court is not authorized to instruct the jury that it may return a verdict of burglary in the second degree. *State v. McAfee, supra; State v. Morris*, 215 N.C. 552, 2 S.E. 2d 554; *State v. Ratcliff*, 199 N.C. 9, 153 S.E. 605. G.S. 15-171 formerly authorized such instruction but was repealed by Session Laws of 1953, c. 100.

In the present case, the evidence is that the house was unoccupied for approximately half an hour immediately before Mr. and Mrs. Patton returned to it and retired for the night without going into the third bedroom of the house. Upon this evidence, there was no error in instructing the jury that if it did not find from the evidence, beyond a reasonable doubt, that the house was occupied at the time of the breaking and entering, it should find the defendant not guilty of burglary in the first degree, but it should return a verdict of burglary in the second degree if it did so find each of the elements thereof — breaking and entering the Patton dwelling house in the nighttime with the intent, at the time thereof, to commit therein one or both of the felonies specified in the indictment. The court so instructed the jury and the jury so found.

There was no error in admitting in evidence the two cans of beer and the Amphetamine tablets found in the defendant's pockets. The police officer who searched the defendant had been informed of the felony committed at the Patton residence and that a barefooted white man, wearing coveralls, was suspected to have been the perpetrator of it. He was looking for such a man. At about 3 a.m., he found the defendant, who answered the description, hiding behind a bush two blocks from the scene of the crime. Under these circumstances, it was lawful for him to arrest the defendant without a warrant. G.S. 15-41(2); *State v. Grier*, 268 N.C. 296, 150 S.E. 2d 443; *State v. Grant*, 248 N.C. 341, 103 S.E. 2d 339; *State v. Fowler*, 172

N.C. 905, 90 S.E. 408; Strong, N. C. Index 2d, Arrest and Bail, § 3. Police officers may search the person of a prisoner lawfully arrested as an incident to such arrest. *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741; *State v. Haney,* 263 N.C. 816, 140 S.E. 2d 544. The officer may lawfully take from the prisoner any property which he has about him which is connected with the crime charged or which may be required as evidence. *State v. Ragland,* 227 N.C. 162, 41 S.E. 2d 285; *State v. Graham,* 74 N.C. 646. If otherwise competent, such article may be introduced in evidence by the State.

A formal declaration of arrest by the officer is not a prerequisite to the making of an arrest. 5 Am. Jur. 2d, Arrest, § 1. The officer's testimony that the defendant was or was not under arrest at a given time is not conclusive. In *Henry v. United States,* 361 U.S. 98, 80 S. Ct. 168, 4 L. ed. 2d, 134, it was said that an arrest was complete when federal officers, without a warrant, stopped an automobile, "interrupted" the two men therein and "restricted their liberty of movement." Here, the defendant was "told" by the officer who accosted him in his hiding place to get into the police car, and was "advised" by the officer to take his hands out of his pockets. The search of his person followed these communications.

In any event, the officer who made the search immediately transported the defendant to the scene of the crime, two blocks away, and there the defendant was formally told that he was under arrest. In *State v. Bell, supra,* we sustained as "incidental to the arrest" a search of an automobile made prior to the formal statement of arrest on the ground that "the search and seizure were so closely related in time and circumstance to the arrest as to make the search and seizure reasonable." The Courts of Appeal for the Sixth and Seventh Circuits have held that a search immediately preceding the formal statement of arrest does not violate the Fourteenth Amendment to the Constitution of the United States, now said by the Supreme Court of the United States to include the provisions of the Fourth. *United States v. Lucas,* 360 F. 2d 937; *Holt v. Simpson,* 340 F. 2d 853. We so hold under the circumstances of the present case. In *United States v. Rabinowitz,* 339 U.S. 56, 70 S. Ct. 430, 94 L. ed. 653, the Court said, "Where one had been placed in the custody of the law by valid action of officers, it was not unreasonable to search him."

There was no violation of the defendant's rights in requiring him, while in custody under a valid arrest upon the charge in this case, to change his clothing and in taking from him the clothing which he wore at the time of his arrest immediately after the alleged offense. There was no error in permitting the State to introduce in evidence the shirt so taken from the defendant and the hair found thereon.

*State v. Ross,* 269 N.C. 739, 153 S.E. 2d 469; *State v. Ragland, supra; State v. Graham, supra;* 5 Am. Jur. 2d, Arrest, § 73, 47 Am. Jur., Searches and Seizures, § 53; 6 C.J.S., Arrest, § 18.

The defendant's motion that the indictment in this case be consolidated for trial with an indictment said to be pending against him for the offense of rape on this occasion was directed to the discretion of the trial court. *State v. Combs,* 200 N.C. 671, 158 S.E. 252. There was no error in its denial.

The denial of this motion for consolidation does not afford any basis for granting the defendant's motion to strike from the indictment for burglary the allegation that the breaking and entering was with the intent to commit rape. We are not here concerned with the indictment for rape. This allegation was proper in the present indictment for burglary whether or not the intended offense of rape was actually committed.

There was no error in sustaining objections to questions propounded by defendant's counsel on cross examination of a witness for the State, these questions being designed to elicit from the witness statements made to him by the defendant. The record does not show what the witness would have said had he been permitted to answer. The State offered no evidence of any statement by the defendant. The defendant offered no evidence whatever. The proposed cross examination could not, therefore, have been competent for the purpose of corroboration of the defendant or impeachment of any witness for the State. Self serving declarations by the defendant offered for any other purpose would obviously be incompetent as hearsay evidence. The court's ruling upon these objections could not possibly be deemed expressions of opinion concerning the defendant's credibility as he contends in his brief.

The defendant's motion for a mistrial, made while the jury was deliberating upon its verdict, for the reason that the morning newspaper contained a story referring to another charge pending against this defendant in Wake County was properly denied. The defendant's counsel quite properly called this newspaper story to the attention of the presiding judge, stating, at the same time, that he had no basis whatever for believing that any juror had seen the newspaper containing the story. The jury had been locked up each night during the trial under the custody of an officer. The court examined this officer, and his testimony was such as to indicate that there was virtually no possibility that any copy of the newspaper had been seen by any member of the jury. At the time the first juror was selected, and repeatedly throughout the trial, the presiding judge clearly and explicitly instructed the jury that they were not to read

any newspaper accounts, or listen to television or radio comments concerning the case or otherwise permit any discussion of it with them by any other person. There is nothing to suggest that these instructions were not complied with by the jurors.

No useful purpose would be served by discussing the remaining assignments of error in detail. We have considered them carefully and find no merit in any of them. The charge of the court to the jury was full, accurate and impartial. It met the requirements of G.S. 1-180.

No error.