STATE OF NORTH CAROLINA v. JONAS BELL

No. 1

(Filed 10 October 1974)

1. **Burglarly and Unlawful Breakings § 1— first degree burglary — elements of offense**

Burglary in the first degree is the breaking and entering in the nighttime of an occupied dwelling or sleeping apartment with intent to commit a felony therein. G.S. 14-51.

State v. Bell

2. **Criminal Law § 104— motion for nonsuit — evidence considered in light most favorable to State**

   A motion for judgment of nonsuit is properly denied if there is any competent evidence to support the allegations contained in the bill of indictment; and all the evidence which tends to sustain those allegations must be considered in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn therefrom.

3. **Criminal Law § 2— intent — proof by circumstances**

   Intent is a mental attitude seldom provable by direct evidence; rather, it must ordinarily be proved by circumstances from which it it may be inferred.

4. **Burglary and Unlawful Breakings § 5— first degree burglary — sufficiency of evidence**

   In a prosecution for first degree burglary, evidence was sufficient to be submitted to the jury and to support the permissible inference that defendant intended to commit rape at the time of the breaking and entering where such evidence tended to show that defendant entered an occupied sleeping compartment in the nighttime by cutting the window screen, that he got in bed with his intended victim, placed a hand over her mouth when he was discovered, threatened to cut her throat if either she or her sister screamed, and pulled up his outside pants and ran from the room when other girls appeared and turned on the light.

   Chief Justice BOBBITT not sitting.

DEFENDANT appeals from judgment of *Armstrong, J.,* 7 January 1974 Session, FORSYTH Superior Court.

Defendant was charged in a bill of indictment, proper in form, with the crime of burglary in the first degree on 26 May 1971.

The State's evidence tends to show that the Julia Higgins Cottage at the Children's Home on Reynolda Road in Winston-Salem, North Carolina, was occupied by twelve or thirteen girls, all rooming on the second floor. On 26 May 1971 Bonnie Louise Whicker and her sister Luann Whicker (Lou Ann in record on previous appeal) shared a room containing two single beds arranged side by side with the headboards against the wall opposite the door to the room. They retired at approximately 9:30 p.m. on the night in question. Bonnie was awakened sometime after midnight when she turned over in her bed and felt someone on her right side—the side away from her sister's bed. She immediately sat up and the intruder put a hand over her mouth. Her scream awakened her sister who also screamed. The intruder told Bonnie he would cut her throat if either of them

screamed again. Bonnie felt what she judged to be a knife pressed against the left side of her throat.

The screams of the Whicker sisters awakened other girls on the hall and two of them came to the foot of Bonnie's bed. Bonnie told them to leave or the intruder would cut her throat. These two girls went back to the door and a third girl came to the room and turned on the light. The intruder got up, pulled up his outside pants, ran out of the room, turned to the left and went down the staircase and exited the building through a window.

Bonnie Louise Whicker has never been able to identify her assailant. Luann Whicker testified, in part, that she was awakened by her sister's screams and that when one of the girls turned on the light the intruder got up, pulled up his pants and ran out of the room. She described the intruder as a seventeen-year-old black male with a goatee and positively identified defendant as the person she saw that night.

Janice Chamelin (Chamberlin in record on previous appeal) testified that her room was next to the Whicker room and that upon hearing the screams she and another girl named Ann Chandler went into the room and stood at the foot of the bed. When a third girl named Dawn Cloninger turned the light on she saw a man sitting on Bonnie's bed with a knife to Bonnie's throat. She described the intruder as a black male, 5 feet 7 or 8 inches tall, weighing about 150 pounds, with bushy hair and a scar on his right forehead. He was wearing a green pair of pants and a green T-shirt. Miss Chamelin positively identified defendant as the person she saw in the Whicker room on the night of 26 May 1971. She testified that defendant had a scar on his right forehead and that it was the same scar she observed on the night in question.

William R. Edwards, Superintendent of the Children's Home, testified that he was awakened by police car sirens at approximately 1:00 a.m. and immediately went to the Julia Higgins Cottage. Upon arriving there, he noticed the window screen to the left of the front door had a tear in it and the screen was unlatched; and the window screen to the right of the front door was completely pushed out. He stated that there was an automatic closing arm on the front door which pushed it closed unless it was propped open.

Detective W. R. Revis of the Winston-Salem Police Department testified that he investigated this case and found, among

other things, that the small tear in the screen on the window to the left of the front door was within reach of the latch; that the screen was unlatched; that the screen on the window to the right of the front door was completely torn out.

Defendant offered no evidence.

The jury returned a verdict of guilty of first degree burglary and defendant was sentenced to life imprisonment. He appealed to the Supreme Court assigning error discussed in the opinion.

*Robert Morgan, Attorney General; William W. Melvin, Assistant Attorney General, for the State of North Carolina.*

*John J. Schramm, Jr., Attorney for defendant appellant.*

HUSKINS, Justice.

When this case was before us on a former appeal, *State v. Bell,* 284 N.C. 416, 200 S.E. 2d 601 (1973), we awarded a new trial for failure to submit to the jury the lesser included offense of felonious breaking or entering. On retrial the jury was instructed to return either of the following verdicts: (1) Guilty of first degree burglary as charged in the bill of indictment; (2) guilty of non-burglarious breaking and entering with intent to commit a felony or other infamous crime; (3) guilty of non-burglarious breaking and entering without intent to commit a felony or other infamous crime; or (4) not guilty. The jury convicted defendant of first degree burglary and he again appeals to this Court.

The sole question presented on this appeal is whether the trial court erred in denying defendant's motion for nonsuit at the close of the State's evidence. Defendant contends the evidence is insufficient to show an intent to commit rape. He therefore argues the trial court erred in overruling his motion to nonsuit the charge of burglary in the first degree.

[1]   Burglary in the first degree is the breaking and entering in the nighttime of an occupied dwelling or sleeping apartment with intent to commit a felony therein. G.S. 14-51; *State v. Bell, supra; State v. Cox,* 281 N.C. 131, 187 S.E. 2d 785 (1972); *State v. Mumford,* 227 N.C. 132, 41 S.E. 2d 201 (1947). The bill of indictment charges that during the night of 26 May 1971 defendant broke and entered the Julia Higgins Cottage occupied by Bonnie Louise Whicker and others "with the felonious intent

to commit the crime of rape in said dwelling house upon the said Bonnie Louise Whicker. . . . "

**[2]** A motion for judgment of nonsuit is properly denied if there is any competent evidence to support the allegations contained in the bill of indictment; and all the evidence which tends to sustain those allegations must be considered in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn therefrom. *State v. Reid,* 230 N.C. 561, 53 S.E. 2d 849, *cert. denied,* 338 U.S. 876, 94 L.Ed. 537, 70 S.Ct. 138 (1949); *State v. Gentry,* 228 N.C. 643, 46 S.E. 2d 863, *cert. denied,* 335 U.S. 818, 93 L.Ed. 372, 69 S.Ct. 39 (1948).

**[3]** Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred. *State v. Arnold,* 264 N.C. 348, 141 S.E. 2d 473 (1965); *State v. Gammons,* 260 N.C. 753, 133 S.E. 2d 649 (1963). "The intent with which an accused broke and entered may be found by the jury from evidence as to what he did within the house. . . . However, the fact that a felony was actually committed after the house was entered is not necessarily proof of the intent requisite for the crime of burglary. It is only evidence from which such intent at the time of the breaking and entering may be found. Conversely, actual commission of the felony, which the indictment charges was intended by the defendant at the time of the breaking and entering, is not required in order to sustain a conviction of burglary." *State v. Tippett,* 270 N.C. 588, 155 S.E. 2d 269 (1967).

**[4]** Here, the evidence tends to show that defendant entered the sleeping apartment of Bonnie Louise Whicker in the nighttime by cutting the window screen; that he got in bed with his intended victim, placed a hand over her mouth when he was discovered, threatened to cut her throat if either she or her sister screamed, and pulled up his outside pants and ran from the room when the other girls appeared and turned on the light. We think this evidence was sufficient to carry the case to the jury upon the allegations contained in the bill of indictment and to support the permissible inference that defendant intended to commit rape at the time he broke and entered the Julia Higgins Cottage. It was for the jury to determine, under all the circumstances, defendant's ulterior criminal intent. The motion for nonsuit was properly denied.

A careful perusal of the entire record impels the conclusion that defendant received a fair trial free from prejudicial error. Therefore the verdict and judgment must be upheld.

No error.

Chief Justice BOBBITT not sitting.