STATE OF NORTH CAROLINA v. ALTON EARL WARREN

No. 191A84

(Filed 2 April 1985)

**1. Criminal Law §§ 26.5, 92.3— failure to join related offenses—availability of dismissal**

A defendant is entitled to a dismissal under G.S. 15A-926(c)(2) if the defendant can show that the prosecution withheld indictment on additional charges solely in order to circumvent statutory joinder requirements.

**2. Criminal Law §§ 26.5, 92.3— failure to join related offenses—evidence not available at first trial**

The trial court did not err in denying defendant's motion to dismiss burglary and larceny charges for failure to join where defendant's previous indictment for murder and conviction of voluntary manslaughter arose from the same incident. The evidence at the hearing on the motion to dismiss tended to show that at the time of the murder trial no witness was available to the State who could testify that anything was missing from within the victim's home; that the victim's purse, found close to the home of defendant's mother, was not

found until after the murder trial; that a detective's testimony that he had overheard defendant say prior to the murder trial that he took the purse would not have created a case so strong as to compel the State to proceed with the larceny charge; and, while there was evidence of a forced entry, there was no evidence that the breaking and entering was accompanied by the intent to commit a felony before the purse was found because defendant had been found guilty only of voluntary manslaughter.

3. **Criminal Law §§ 26.5, 92.3— failure to join related offenses—collateral estoppel not applicable**

There was no error in the denial of defendant's motion to dismiss for double jeopardy burglary and larceny charges which were brought after he was tried for murder and convicted of voluntary manslaughter. Defendant did not provide a transcript of the murder trial to the court in support of his motion to dismiss; moreover, collateral estoppel did not apply because the only ultimate issue of fact determined by the court's dismissal of the first-degree murder charge was that defendant did not kill the deceased with premeditation and deliberation.

4. **Burglary and Unlawful Breakings § 8— burglary sentence consecutive with prior manslaughter sentence—no error**

The trial court correctly ordered defendant's burglary sentence to run consecutively with a prior manslaughter sentence; the plain meaning of G.S. 14-52 is that a term imposed for burglary is to run consecutively with *any other sentence* being served by defendant.

Justice VAUGHN took no part in the consideration or decision of this case.

APPEAL of right under N.C.G.S. 7A-30(2) from the decision of a divided panel of the Court of Appeals, 67 N.C. App. 337, 313 S.E. 2d 181 (1984), finding no error in the judgments or sentences for first degree burglary and felonious larceny entered against the defendant by *Judge Bradford Tillery* on March 30, 1983 in Superior Court, DUPLIN County. The defendant's petition for discretionary review of additional issues was allowed on July 27, 1984. Heard in the Supreme Court November 14, 1984.

*Rufus L. Edmisten, Attorney General, by Marilyn R. Rich, Assistant Attorney General, for the State.*

*Edward G. Bailey and Glenn O'Keith Fisher for the defendant appellant.*

MITCHELL, Justice.

The defendant appeals from judgments and sentences of imprisonment entered against him after verdicts of guilty were returned by the jury on charges of first degree burglary and felonious larceny. On appeal he contends that the trial court erred

in denying his motion to dismiss the charges because of the State's failure to join them for trial with a related murder charge and for a violation of the prohibition against double jeopardy. The defendant also contends the trial court erred by ordering that the imprisonment for the burglary conviction be consecutive to the sentence he was already serving. Having reviewed the assignments of error and contentions of the defendant, we affirm the holding of the Court of Appeals finding no error.

The first degree burglary and felonious larceny charges for which the defendant was convicted arose out of events occurring at the mobile home of Dorothy Kilpatrick Petersen on the evening of January 28, 1982. The defendant was indicted on March 1, 1982 for the first degree murder of Petersen and was tried at the July 12, 1982 Criminal Session of Superior Court, Duplin County. The defendant's motion to dismiss was allowed as to the charge of first degree murder and the case was submitted to the jury on second degree murder and lesser included offenses. The defendant was found guilty of voluntary manslaughter and was sentenced to the presumptive term of six years.

On January 17, 1983, the defendant was indicted for the first degree burglary of the mobile home and the larceny of Petersen's pocketbook and automobile. The defendant moved to dismiss the charges for failure to join offenses in violation of N.C.G.S. 15A-926(c)(2) and for a violation of the prohibition against double jeopardy.

Following a pretrial hearing in the present case, the trial court dismissed the charge of larceny of the automobile. No issue is before us concerning that charge. The trial court, however, found that at the time of the murder trial the prosecutor did not possess sufficient evidence to warrant trying the defendant for burglary or for larceny of the purse and denied the motion to dismiss as to those charges.

The evidence at trial in the present case tended to show that the defendant and Petersen had been dating for approximately two years. The defendant left his mother's home at approximately 7:00 p.m. on January 28, 1982 to purchase some cigarettes. He returned sometime after midnight. His stepfather testified that the defendant was intoxicated when he returned. As a result of a conversation with the defendant, the stepfather checked his bed-

room closet and discovered that his .357 caliber pistol was missing. He then went outside and looked in a Ford Pinto parked in the driveway which he recognized as belonging to Petersen. He found the pistol lying on the floor of the car. The stepfather then notified the police.

At approximately 1:00 a.m. January 29, Lieutenant Melvin Vernon of the Topsail Beach Police Department arrived at the home of the defendant's mother. At that time the stepfather turned the gun over to him. The defendant was very emotional and seemed to be intoxicated. Vernon contacted the Duplin County Sheriff's Department, and Jimmy Smith, a deputy with the Duplin County Sheriff's Department, was dispatched to Petersen's home. He observed a Buick automobile stuck in a ditch across the road from the mobile home. The car was later identified as belonging to the defendant. Smith looked through a window of the mobile home and saw a body covered with a blanket lying on the living room floor. He entered through the unlocked front door and examined the body which was later identified as that of Dorothy Kilpatrick Petersen. She had been killed by a gunshot wound to the head. The rear door was standing open approximately one foot, and the screen had a hole in it near the handle. A glass slat was missing from the rear door.

Later that morning other law enforcement officers discovered the glass slat which was missing from the rear door about eight feet from the mobile home. They also found a bullet lodged in a curtain over the couch in the living room. Expert testimony indicated that the bullet was fired from the .357 pistol which had been turned over to the authorities by the defendant's stepfather.

Thomas Rackley, a neighbor of the deceased, testified that between 7:00 p.m. and 8:00 p.m. on January 28, the defendant came to his house, knocked on the door and called out his name. Rackley did not answer the door but later looked out a window and saw the defendant in Petersen's mobile home. Subsequently, he heard the sound of tires spinning. He went to investigate and discovered the defendant's car in a ditch.

Robert Sipper discovered a purse on July 27, 1982 three and a half blocks from the home of the defendant's mother. Petersen's name was on identification cards found in the purse. Chief Detective Alfred Basden of the Duplin County Sheriff's Department

testified that prior to the murder trial he overheard the defendant tell members of his family that he had taken the purse and disposed of it somewhere near his mother's house.

The defendant testified that he had met Petersen in July 1980 and that they began to date. He had been drinking on the night of January 28, 1982 and for several days prior to that date. He took his stepfather's pistol to protect himself on a trip that he was preparing to take. On the evening of January 28 he decided to visit Dorothy Petersen. When he entered the Petersen home, she noticed the gun in his coat. She told him to put it away, and he placed it on a table. After visiting with Petersen he picked up the gun and prepared to leave. As he was placing the gun in his coat, it discharged hitting Petersen. He ran to a neighbor's house to get help but was unable to find anyone. When he tried to drive his car for help, it became stuck in the ditch. He tried to reenter the mobile home but found the front door locked. He then removed a glass panel from the back door and went inside.

The next thing the defendant remembered was driving Petersen's car. He drove around contemplating suicide before returning to Topsail Beach. He then realized that he had taken Petersen's purse. He placed the purse on the shoulder of the road a few blocks from his mother's house. He then drove to his mother's and told his stepfather that there had been an accident and Petersen was dead.

Ralph Freeman, an investigator with the law firm which represented the defendant on the murder charge, testified that the defendant had told him that he had placed the purse in a vacant lot near his mother's house. Freeman unsuccessfully attempted to locate the purse.

At the close of all of the evidence, the defendant made a motion as for nonsuit which was denied. The jury returned a verdict of guilty of first degree burglary and felonious larceny. He was sentenced to a prison term of fourteen years for the burglary conviction which was to be consecutive to the six year sentence imposed for the manslaughter conviction in the previous trial. He was sentenced to three years for the felonious larceny, which was to run concurrently with the term imposed for the burglary conviction.

[1]   The defendant first contends that the trial court erred by failing to dismiss the first degree burglary and felonious larceny charges due to the State's failure to join them for trial with the prior murder charge. N.C.G.S. 15A-926(c)(2) provides:

> A defendant who has been tried for one offense may thereafter move to dismiss a charge of a joinable offense. The motion to dismiss must be made prior to the second trial, and must be granted unless
>
> a. A motion for joinder of these offenses was previously denied, or
>
> b. The court finds that the right of joinder has been waived, or
>
> c. The court finds that because the prosecutor did not have sufficient evidence to warrant trying this offense at the time of the first trial, or because of some other reason, the ends of justice would be defeated if the motion were granted.

Joinable offenses are those which arise out of the same act or transaction or out of a series of acts or transactions connected together or constituting parts of a single scheme or plan. N.C.G.S. 15A-926(a). Clearly, the burglary and larceny charges could have been joined for trial with the murder charge if they had been pending at the time of that trial. The evidence at the pretrial hearing concerning the State's failure to do so, however, did not require that the trial court dismiss these charges.

Our analysis of the defendant's argument is guided by a review of *State v. Furr*, 292 N.C. 711, 235 S.E. 2d 193, *cert. denied*, 434 U.S. 924 (1977). In that case the defendant was indicted and tried for first degree murder. The trial ended in a mistrial. Indictments were subsequently returned charging the defendant with twelve counts of solicitation to commit the same murder. The solicitation charges were joined with the murder charge on retrial, and the defendant was convicted on all counts. The defendant claimed that the trial court erred in failing to dismiss the solicitation charges because they were not joined with the murder prosecution at the first trial.

We held in *Furr* that N.C.G.S. 15A-926 did not apply because the defendant had not been indicted for the solicitation charges at the time of the first trial and they could not have been joined with the murder charge at that time. We also noted that there was no evidence to indicate that the prosecution had held the solicitation charges in reserve pending the outcome of the murder trial. The defendant in the case *sub judice* asserts that we should explicitly recognize this statement as a qualification to the holding in *Furr*. We agree.

If a defendant shows that the prosecution withheld indictment on additional charges solely in order to circumvent the statutory joinder requirements, the defendant is entitled under N.C.G.S. 15A-926(c)(2) to a dismissal of the additional charges. The defendant must bear the burden of persuasion in such cases. This interpretation of the statute is given some support by the fact that the Supreme Court of the United States has intimated that due process would require the dismissal of an indictment "if it were shown at trial that the pre-indictment delay . . . caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *U.S. v. Marion*, 404 U.S. 307, 324 (1971).

If a defendant can show, for example, that during the first trial the *prosecutor* was aware of substantial evidence that the defendant had committed the crimes for which he was later indicted, this would be some evidence that the delay in bringing the later indictment was for the purpose of circumventing the statute. A showing that the State's evidence at the second trial would be the same as the evidence presented at the first would also tend to show that the prosecutor delayed indictment on the additional crimes for such purpose. A finding of either or both circumstances would support but not compel a determination by the trial court that the prosecutor withheld the additional indictment in order to circumvent the statute.

[2]   When reviewing the trial court's denial of the defendant's motion to dismiss in this case, we may only consider the evidence before the trial court when it made its ruling at the conclusion of the pretrial hearing. When the case at hand is reviewed in such light, we are unable to say that the trial court erred in denying the defendant's motion to dismiss the additional charges.

At the pretrial hearing on the defendant's motion, Chief Detective Basden testified that although he heard the defendant tell relatives prior to the murder trial that he had taken the purse and disposed of it near his mother's house, the purse had not been recovered at the time of the first trial. Basden's testimony was ambiguous as to when he informed the prosecutor that he had overheard the defendant's conversation concerning the purse.

Assistant District Attorney Hudson also testified at the pretrial hearing. He stated that at the time of the first trial he possessed evidence tending to show that there had been a breaking into the mobile home. He also acknowledged that he had received information from the defendant's lawyer that a purse belonging to Petersen was missing. He indicated, however, that no witness was available to him who would testify to this fact. He stated that he could not recall whether Basden told him of the conversation he had overheard before, during or after the murder trial. Hudson testified that a search was conducted for the purse prior to the first trial, but that it was not found until two weeks after the trial. He also testified that the State did not elect to proceed on the theory of felony murder at the first trial.

Hudson stated that at the time the defendant was indicted for first degree murder, the State had no intention of bringing these additional charges against him because there was insufficient evidence to prove that the defendant had stolen anything. After the purse was located a decision was made to indict the defendant for the additional crimes of larceny and burglary. Hudson acknowledged that this decision was based in part on the fact that the victim's family was dissatisfied with the verdict in the murder trial.

Therefore, with regard to the larceny charge, the evidence at the hearing on the motion to dismiss tended to show that at the time of the murder trial no witness was available to the State who could testify that anything was missing from within the victim's home. The purse itself was not found until after the completion of the murder trial. Assuming *arguendo* that prior to the murder trial Basden reported to the prosecutor that he had heard the defendant state that he took the purse, such evidence would not have created a case so strong as to compel the State to pro-

ceed with the larceny charge at that time or risk dismissal at some later date. The statutory joinder requirements do not compel a prosecutor to seek an indictment simply because he has enough evidence available to establish probable cause, "a quantum of evidence which may fall short of the amount necessary to support a criminal conviction." *Hoffa v. United States,* 385 U.S. 293, 310 (1966), *reh. denied,* 386 U.S. 940 (1967). Here, the State could have shown little more than probable cause for a larceny charge until the purse was recovered after the murder trial.

With regard to the first degree burglary charge, the testimony during the pretrial hearing on the defendant's motion showed that the State introduced evidence during the murder trial of a forced entry. One of the constituent elements of first degree burglary, however, is that the breaking and entering must have been accompanied by the intent to commit a felony. *State v. Beaver,* 291 N.C. 137, 229 S.E. 2d 179 (1976); *State v. Tippett,* 270 N.C. 588, 155 S.E. 2d 269 (1967). We have said that intent is a mental attitude which is rarely provable by direct evidence but must ordinarily be shown by circumstances from which it may be inferred. *State v. Bell,* 285 N.C. 746, 208 S.E. 2d 506 (1974). The intent which existed at the time of a breaking and entering may be inferred from evidence of what the accused did within the dwelling. *State v. Tippett,* 270 N.C. 588, 155 S.E. 2d 269 (1967). The fact that a felony was actually committed in the dwelling, however, does not necessarily establish the intent required for the crime of burglary. It is merely evidence from which such an intent at the time of the breaking and entering may be found. *Id.*

At the time of the murder trial, the only evidence of what the defendant did in the mobile home was the fact that Petersen was found there shot to death. The defendant strenuously argues that the murder could have served as the underlying felony for the first degree burglary charge. The fact that the jury in the murder trial found the defendant guilty only of voluntary manslaughter, however, indicates the lack of evidence available to the State during the first trial to show that the defendant broke into the home with the premeditated and deliberate intent to kill Petersen. It was not until Petersen's purse was found that the State had clear evidence of a specific intent to support a charge of first degree burglary.

We also find it significant that during the murder trial the State did not proceed under the felony murder theory. If the prosecutor had possessed evidence of burglary or any other felony, it would seem that he would have presented it and relied upon the felony murder theory in the hope of increasing the possibility of a first degree murder conviction.

The record before us does not show that a transcript of the murder trial was introduced or made available to the trial court during the pretrial hearing in this case for a comparison of the evidence presented during the murder trial with the State's forecast of evidence on the larceny and burglary charges. The Assistant District Attorney testified, however, that the only additional evidence he had was the purse and its contents. Assuming *arguendo* that evidence at the hearing provided an adequate basis for the trial court to compare the evidence presented during the murder trial with the State's forecast of evidence in the burglary and larceny trial, it is clear that the purse provided the State with much stronger evidence of first degree burglary than was available at the time of the defendant's trial for murder.

The evidence before the trial court during the pretrial hearing on the defendant's motion to dismiss tended to show valid reasons for the State's failure to seek the indictment charging larceny and burglary before the defendant was tried on the murder charge. This evidence would support a determination that the prosecutor did not withhold the additional indictment solely for the purpose of circumventing N.C.G.S. 15A-926. It certainly did not compel a determination that the prosecutor withheld the indictment solely for such purpose. Therefore, the trial court did not err in denying the motion to dismiss the burglary and larceny charges.

[3] The defendant next contends that the denial of his motion to dismiss the burglary and larceny charges violated the constitutional prohibition against double jeopardy. He argues that the concept of collateral estoppel barred the State from bringing these charges because the issues of ultimate fact as to them were determined at the first trial. Specifically, he argues that the dismissal of the first degree murder charge at the close of the State's evidence at the first trial necessarily included a deter-

mination that there was no underlying felony such as burglary or larceny. We disagree.

The double jeopardy clause of the Fifth Amendment was made applicable to the states in *Benton v. Maryland*, 395 U.S. 784 (1969). Embodied within the prohibition against double jeopardy is the concept of collateral estoppel. *Ashe v. Swenson*, 397 U.S. 436 (1970). "Collateral estoppel" means that once an issue of ultimate fact has been determined by a valid and final judgment, that issue may not be relitigated by the same parties in a subsequent action. *Id.* at 443; *State v. Lewis*, 311 N.C. 727, 319 S.E. 2d 145 (1984).

When raising a claim of collateral estoppel, the defendant bears the burden of showing that the issue he seeks to foreclose was *necessarily* resolved in his favor at the prior proceeding. *U.S. v. Hewitt*, 663 F. 2d 1381 (11th Cir. 1981); *U.S. v. Castro*, 629 F. 2d 456 (7th Cir. 1980). There is no indication in the record that a transcript of the murder trial was provided to the trial court in the present case in support of the motion to dismiss. The defendant's failure to provide a transcript of the previous trial provided an adequate basis for the trial court's refusal to hold the State collaterally estopped in the case at hand. *Turley v. Wyrick*, 554 F. 2d 840 (8th Cir. 1977), *cert. denied*, 434 U.S. 1033 (1978); *U.S. v. Tierney*, 424 F. 2d 643 (9th Cir. 1970), *cert. denied*, 400 U.S. 850 (1970). It is clear even in the absence of a transcript, however, that collateral estoppel does not apply in the present case.

At the pretrial hearing, the Assistant District Attorney testified that the defendant was tried for murder at the first trial solely on the theory of premeditation and deliberation. He stated that no evidence was introduced on the theory of felony murder, and neither side put forth the felony murder doctrine during arguments on the motion as for nonsuit on the first degree murder charge. This testimony was uncontroverted. Therefore, the only ultimate issue of fact determined by the court's dismissal of the first degree murder charge during the first trial was that the defendant did not kill the deceased with premeditation and deliberation. Since the State did not seek to prosecute on the theory of felony murder at the first trial, the defendant's argument that the court necessarily decided there that an underlying felony did not exist is meritless.

[4] The defendant's final contention relates to the sentence imposed by the trial court for the burglary conviction. N.C.G.S. 14-52 sets out the punishment for first and second degree burglary. The final sentence of the provision states: "Sentences imposed pursuant to this section shall run consecutively with and shall commence at the expiration of any sentence being served by the person sentenced hereunder." The trial court sentenced the defendant to a fourteen-year term of imprisonment for the burglary to run consecutively with the six-year term imposed for the manslaughter conviction at the first trial. The presiding judge stated, however, that he ordered the burglary sentence to run consecutively with the sentence for manslaughter only because he felt such a result was mandated by N.C.G.S. 14-52. Otherwise, he would have ordered that the burglary sentence be served concurrently with the previous sentence.

The defendant contends that the trial court's construction of N.C.G.S. 14-52 was erroneous. He argues that under the statute the only time a trial court is required to enter a burglary sentence consecutive to another sentence is when that other sentence was also imposed for burglary. We disagree.

The last sentence of N.C.G.S. 14-52 is clear and unambiguous. In such cases judicial construction is not permitted and the courts must give the statute its plain and definite meaning. *State v. Koberlein*, 309 N.C. 601, 308 S.E. 2d 442 (1983); *State v. Wall*, 304 N.C. 609, 286 S.E. 2d 68 (1982). The plain meaning of N.C.G.S. 14-52 is that a term imposed for burglary under the statute is to run consecutively with *any other sentence* being served by the defendant. The trial court was, therefore, correct in interpreting N.C.G.S. 14-52 as requiring that the burglary sentence be made consecutive to the sentence for the prior manslaughter conviction.

For the foregoing reasons, the decision of the Court of Appeals finding no error in the defendant's trial and sentences is

Affirmed.

Justice VAUGHN took no part in the consideration or decision of this case.