STATE OF NORTH CAROLINA v. BRYAN ERIC GRAY

No. 588A87

(Filed 2 June 1988)

**1. Constitutional Law § 60; Jury § 7.14— peremptory challenges—purposeful racial discrimination—insufficiency of evidence**

Defendant failed to make a *prima facie* showing of racial discrimination by the State's exercise of its peremptory challenges where the prosecuting attorney asked all the jurors essentially the same questions; no questions indicated any prejudice or discrimination on the part of the prosecuting attorney; the State used all its peremptory challenges, four to white jurors and two to black jurors; and the prosecuting attorney knew that by using four peremptory challenges for white jurors which helped to exhaust his peremptory challenges that some white jurors could be replaced by black jurors.

**2. Jury § 6— voir dire examination—asking questions of individual jurors—discretion of trial court**

The trial court did not err in refusing to allow defense counsel to ask individual prospective jurors questions which could be addressed to the whole panel since a black defendant does not have a constitutional right to make an individualized inquiry into the existence of racial bias in potential jurors; the rule in this state is that the court may require certain general questions to be asked of the panel as a whole; the trial judge stated that defense counsel could ask individual jurors questions if he wanted to ask questions which the whole panel couldn't answer; and the trial court did allow defense counsel to ask the potential jurors questions about racial bias.

**3. Burglary and Unlawful Breakings § 5.11— intent to commit rape—sufficiency of evidence of felonious intent**

Evidence that defendant committed rape after he entered a building was evidence he intended to commit rape at the time he broke into the building, and the trial court therefore properly submitted the charge of felonious breaking or entering to the jury.

**4. Burglary and Unlawful Breakings § 7— felonious intent at time of breaking or entering—failure to instruct on lesser offenses error**

If the jury did not find that defendant intended to commit rape at the time he entered a building but found other elements of breaking or entering, the jury should have found defendant guilty of misdemeanor breaking or entering, and the trial court therefore erred in failing to submit misdemeanor breaking or entering as a possible verdict.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a life sentence entered by *Wood, Judge,* at the 6 July 1987 Session of Superior Court, CABARRUS County. This Court allowed defendant's motion to bypass the Court of Appeals as to the judgment imposing a sentence of less than life imprisonment. Heard in the Supreme Court 11 April 1988.

The defendant was tried for first degree rape and felonious breaking or entering. The defendant, a black man, was charged with raping a white woman. Margaret Thompson testified that at 7:45 a.m. on 5 March 1987 she was at home with her four-year-old daughter while her husband was at work. She heard the dog barking in the backyard, and went to investigate. As she reached the kitchen, she noticed that the door to the back porch was open. She then noticed that her pocketbook was on the ironing board on the back porch, and her wallet was lying open beside it. A man whom she identified as defendant emerged from behind the door, holding a small silver handgun. He made her put her hands and head on the washing machine. He learned from her that her daughter was in the house, and threatened to kill Ms. Thompson and her daughter because he "had nothing to lose." He told her at gunpoint to stand up, started kissing her, took out his penis, ordered her to undress, and told her to get on the dryer. He began to lick her vagina and then told her to lie on the floor at which time he had sexual intercourse with her. He held the gun on her at all times during the incident. As he left her house, the defendant handed Mrs. Thompson some money and said, "Here, I'm not a thief."

Defendant admitted that he had intercourse with Ms. Thompson but claimed it was with her consent.

The defendant was convicted of both charges. He appealed from the imposition of prison sentences.

*Lacy H. Thornburg, Attorney General, by Steven F. Bryant, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant appellant.*

WEBB, Justice.

[1]   The defendant's first assignment of error is to the denial of his motion for mistrial based on what the defendant contends was purposeful racial discrimination by the State in the selection of the jury. The defendant made this motion immediately after the jury was selected and before it was impaneled. The court had a hearing and made findings which were supported by the evidence that (1) the prosecuting attorney asked all the jurors essentially the same questions, (2) no questions indicated any prejudice or discrimination on the part of the prosecuting attorney, and (3) the State used all its peremptory challenges, four to white jurors and two to black jurors. The court found the prosecuting attorney knew that by using four peremptory challenges for white jurors which helped to exhaust his peremptory challenges that some white jurors could be replaced by black jurors. The court held the defendant had not made a prima facie showing of racial discrimination by the State in the exercise of its peremptory challenges.

In *Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed. 2d 69 (1986), the United States Supreme Court held a defendant may make a prima facie case of racial discrimination in the selection of a jury solely on evidence concerning the prosecutor's exercise of peremptory challenges. If a defendant challenges the jury selection on the grounds that the State has purposefully discriminated on the basis of race, the trial court must determine if the defendant has made a prima facie case. The court may consider all relevant circumstances including the pattern of strikes against black jurors and questions during the voir dire. In this case the court considered the questions on voir dire and the pattern of strikes against black jurors and held the defendant had not made a prima facie showing of discrimination in the selection of the jury. The factors considered by the court support its ruling. Paying due deference, as we must, to the ruling of the superior court, we can-

not disturb its order. *See State v. Jackson,* 322 N.C. 251, 368 S.E. 2d 838 (1988).

[2]  Defendant next contends the trial court erred in refusing to allow defense counsel to ask individual prospective jurors questions which could be addressed to the whole panel. Defendant argues that this was error because under *Ham v. South Carolina,* 409 U.S. 524, 35 L.Ed. 2d 46 (1973), and *Turner v. Murray,* 476 U.S. 28, 90 L.Ed. 2d 27 (1986), "a black defendant has a constitutional right to make an individualized inquiry into the existence of racial bias in potential jurors." We disagree. The cases defendant cites do not stand for the proposition for which he cites them. Both of those cases merely hold that defendant has the right to have the jurors interrogated on the issue of racial bias. In *Turner,* the Court clearly states that "the trial judge retains discretion as to the form and number of questions on the subject, including the decision whether to question the venire individually or collectively." *Turner v. Murray,* 476 U.S. at 37, 90 L.Ed. 2d at 37. The rule in this state is that the court may require certain general questions to be asked of the panel as a whole. *State v. Phillips,* 300 N.C. 678, 268 S.E. 2d 452 (1980). The trial judge in the present case, while requiring that counsel address the panel as a whole when the question applied to the whole panel, clearly stated, "If you want to ask them questions that the whole panel can't answer, that will be fine, I'll let you ask them." We also find, in examining the record, that the trial court did allow defense counsel to ask the potential jurors questions about racial bias. This assignment of error is overruled.

[3]  The defendant next contends it was error to deny his motion to dismiss the charge of felonious breaking or entering. The essential elements of felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein. N.C.G.S. § 14-54(a) (1986). The felonious intent required to satisfy the third element must be the intent set out in the indictment. *State v. Dawkins,* 305 N.C. 289, 287 S.E. 2d 885 (1982). In this case, because the defendant was indicted for breaking or entering with the intent to commit rape, the State was obligated to prove the defendant intended to commit rape at the time he entered the victim's house.

The defendant argues that all the evidence showed that at the time he entered the house he intended to commit larceny

rather than rape and the proof of the third element is lacking. We have held or said in several cases that evidence of what a defendant does after he breaks and enters a house is evidence of his intent at the time of the breaking and entering. *See State v. Peacock,* 313 N.C. 554, 330 S.E. 2d 190 (1985); *State v. Warren,* 313 N.C. 254, 328 S.E. 2d 256 (1985); *State v. Bell,* 285 N.C. 746, 208 S.E. 2d 506 (1974); and *State v. Tippett,* 270 N.C. 588, 155 S.E. 2d 269 (1967). In this case the evidence that the defendant committed rape after he entered the building is evidence he intended to commit rape at the time he broke into the building.

The defendant argues that the rule is not as broad as we have stated it. He says that in *Tippett* this Court said in the absence of contrary evidence, proof that the defendant attempted to commit rape after he entered the building is evidence he intended to commit rape at the time he entered. In this case, says the defendant, there is contrary evidence, which is that he intended to commit larceny. In *Tippett* the defendant was tried for burglary. The indictment alleged that he broke into the house with the felonious intent to steal goods therein and to commit rape upon the woman therein. The evidence showed he first took some money from a pocketbook and then attempted to rape a woman occupant of the house. We held the evidence was sufficient to find the defendant intended to commit larceny or rape at the time of the breaking or entering. We believe that under the rule of *Tippett,* felonious breaking or entering was properly submitted to the jury.

[4] In his last assignment of error, the defendant contends misdemeanor breaking or entering should have been submitted as a possible verdict to the jury. This assignment of error has merit. Misdemeanor breaking or entering is a lesser included offense of felonious breaking or entering. The jury was not compelled to find from the evidence that the defendant intended to commit rape at the time he entered the building. *Tippett,* 270 N.C. 588, 155 S.E. 2d 269. If the jury had not found the defendant intended to commit rape at the time he entered the building and found the other elements of breaking or entering, they should have found him guilty of misdemeanor breaking or entering. This possible verdict should have been submitted to the jury. *Peacock,* 313 N.C. 554, 330 S.E. 2d 190. *State v. Faircloth,* 297 N.C. 388, 255 S.E. 2d 366 (1979), relied on by the State, is not controlling. In that case

the defendant testified the prosecuting witness invited him into her home. If the jury had believed the defendant's evidence there would have been no breaking or entering. We held misdemeanor breaking or entering should not be submitted to the jury under those circumstances.

We find no error in the conviction of rape. We hold there must be a new trial for the charge of felonious breaking or entering.

No error in 87CRS197.

New trial in 87CRS198.